Gustave E. BUSH, Plaintiff,

v.

Mickey M. COULT et al., Defendants.

The LOCKHART COMPANY, Third Party Plaintiff and Respondent,

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, Third Party Defendant and Appellant.

No. 15680.

Supreme Court of Utah.

April 2, 1979.

Robert L. Backman of Backman, Clark & Marsh, Salt Lake City, for plaintiff.

Brant H. Wall, Salt Lake City, for appellant.

David Irvine, Salt Lake City, for defendants.

W. Clark Burt and Gary R. Howe of Callister, Greene & Nebeker, Salt Lake City, for respondent.

HALL, Justice:

Commonwealth Land Title Insurance Company (hereinafter "Commonwealth") appeals from a judgment in favor of the Lockhart Company (hereinafter "Lockhart") for losses incurred due to a title defect in real property insured under a title policy issued by Commonwealth.

The original plaintiff in this case, Gustave E. Bush (hereinafter "Bush"), filed suit against defendant Mickey M. Coult (hereinafter "Coult"), and others, including Lockhart. Bush was successful in proving the deed of conveyance to Coult was a forgery, and thus quieted the title to the land in question.

Lockhart had financed Coult's endeavor to develop the land and received a trust deed to secure the notes evidencing the loan. Commonwealth insured Coult's title and Lockhart's interest under the deed of trust. Consequently, Lockhart filed a third party complaint against Commonwealth which resulted in the judgment appealed from.

Commonwealth defended under an "exclusion from coverage" clause contained in the title policy which deprives an insured of insurance benefits if he fails to disclose prior knowledge of title defects.

The material facts of this case are not in dispute. Lockhart was considering a loan to one Jerome Yeck to finance a subdivision development of the property in question. It suggested that Coult[1] seek a title insurance commitment from Western States Title Insurance Company (hereinafter "Western"). Western declined to insure the property because of Yeck's involvement as a corporate director of Deseret Distributing Company (hereinafter "Deseret"), which was purportedly holding an unrecorded deed to said property. Lockhart was informed by one Lou Livingston[2] that the unrecorded deed was invalid, that they had no interest in insuring the property, and that they had no desire to do business with Jerome Yeck. In response to an inquiry from Coult as to whether Lockhart would reconsider the loan if the situation was "restructured" with fee title in someone else, it was acknowledged that it would. Thereafter, Coult "restructured" the matter by ac-

quiring the deed[3] in his name as grantee and then obtained the policy of title insurance in question from Commonwealth. No disclosure was made as to the prior refusal of Western to insure the property.

The sum and substance of the trial court's findings and conclusions in support of its judgment was that the non-disclosure of the involvement of Jerome Yeck did not constitute a title defect or other matter which would preclude recovery on the title policy and that the loss sustained was the result of the forged deed which was an entirely different matter, unknown to Lockhart, and having nothing to do with any of said undisclosed matters.

Commonwealth urges three points on appeal, however, at the heart of each is the challenge that the evidence was insufficient to support the conclusions of the trial court. Hence, we are called upon to canvass the record for the purpose of ascertaining whether there is substantial, competent, admissible evidence to support the conclusions reached.[4] If so, this Court is precluded from disturbing it.[5]

The record is devoid of evidence pertaining to a title defect other than that occasioned by the forged deed, and is also devoid of evidence as would connect Yeck or Deseret to the forgery. It is also to be observed that any interest Yeck or Deseret may have had in the property was extinguished by the decree quieting title and that the trial court took judicial notice of said decree.

The record is also silent as to whether Lockhart had any knowledge of the alleged dubious nature of Yeck's integrity as would put it on notice that his "involvement," such as it was, would in any way influence Commonwealth's judgment in insuring the property. Certainly, Commonwealth has suffered no known loss or damage as a

---

1. At that time Coult was an agent of Holmquist & Sons, Realtors and interested in selling the proposed subdivision lots.

2. Apparently in a position of some authority with Western.

3. Which has since been adjudged a forgery.

4. *Griffeth v. Zumbrennen*, Utah, 577 P.2d 129 (1978).

5. Ibid. See also, *Owen v. Owen*, Utah, 579 P.2d 911 (1978).

result of the deed purportedly held by Deseret and the involvement of Yeck.

Western declined to insure the title, not because of a defect therein, but for the explicit *personal* reason that it "did not care to have any business transactions with Jerome Yeck." Certainly, Lockhart had no legal obligation to convey that information to Commonwealth.

 Title insurance contracts differ from other types of insurance contracts since they require no written application. Title insurance contracts are warranties and the insurer determines the state of the title. The purpose and object of a title insurance policy is made clear in *Research Loan & Invest. Corp. v. Lawyers Title Ins. Corp.*[6] which cites *Empire Development Co. v. Title Guarantee & Trust Co.*[7] The court noted as follows:

> . . . "[t]o a layman a [title] search is a mystery, and the various pitfalls that may beset his title are dreaded, but unknown."

It [*Empire*] then held that:

> "To avoid a possible claim against him, to obviate the need and expense of professional advice, and the uncertainty that sometimes results even after it has been obtained, is the very purpose for which the owner seeks insurance."

That case [*Empire*] continued:

> "A title policy is much in the nature of a *covenant of warranty* or a *covenant against encumbrances*. . . ." [Emphasis added.]

The Eighth Circuit Court of Appeals, in reversing the district court,[8] did not disturb these concepts of title insurance. Rather, the circuit court reinforced them:

> This appeal raises serious questions concerning the fundamental nature of title insurance . . . Usually, the very purpose and essence of the title insurance transaction is to obtain a professional title search, opinion and guarantee. *The policy of title insurance is in the nature of a warranty.* [Emphasis added.]

Thus it is seen that the law imposes no duty upon one who seeks title insurance to perform the responsibilities of the insurer to ascertain the state of the title.

The record adequately supports the judgment of the trial court and we therefore affirm. Costs to Lockhart.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

6. 225 F.Supp. 287 (W.D.Mo.1964).

7. 225 N.Y. 53, 121 N.E. 468 (1918).

8. 361 F.2d 764 (1966).