ZIONS FIRST NATIONAL BANK, N.A.,
Plaintiff and Respondent,

v.

NATIONAL AMERICAN TITLE INSUR-
ANCE COMPANY, Defendant
and Appellant.

No. 19750.

Supreme Court of Utah.

Jan. 22, 1988.

Bryce E. Roe, William G. Fowler, Salt Lake City, for defendant and appellant.

W. Clark Burt, Steven R. Ellinwood, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

National American Title Insurance Co. ("National American") appeals from a judgment entered after trial to the court holding it liable to Zions First National Bank ("Zions") under a title insurance policy. National American contends that several of the trial court's constructions of the insurance policy were erroneous and that certain factual findings lack adequate evidentiary support. National American also contends that the trial court's award of attorney fees was improper. We affirm in all respects, except we reverse the award of attorney fees and remand for further proceedings on that issue.

Jeffery Olson and his partner, Steven Gibbs, had a banking relationship with Zions. By November of 1979, Olson and Gibbs owed Zions $311,000 for loans and overdrafts. Because the debt was large and unsecured, Zions instructed two of its bank officers, Robin Hampton and Dave Fuhriman, to meet with Olson and Gibbs to discuss the pledging of collateral as security in lieu of Zions' instituting legal action on the debts. Olson and Gibbs promised to pledge eight properties, including the home of Olson's parents.

On December 17, 1979, Hampton and Fuhriman met with Olson and Gibbs to have them sign trust deeds for the eight properties. In the presence of the bank officers, Olson and Gibbs signed all of the deeds, except the deed to the home of Olson's parents. Olson's parents did not appear at the meeting, so Fuhriman and Olson took the trust deed to Olson's parents' house to get the necessary signatures. When Jeffery Olson asked his father, Virgil Olson, to sign the trust deed, Virgil said that he could not sign the deed until he had spoken with his wife, Sara. Jeffery Olson then left with Fuhriman.

Fuhriman gave the trust deed to Hampton the next morning, and Hampton later gave it to Jeffery Olson, asking him to have it signed and returned to Zions. Jeffery returned the signed and notarized trust deed to Hampton later that day, and Hampton delivered it to National American's agent, Record Title Company, which recorded it.

In February of 1981, Virgil Olson was informed that Zions had a trust deed that he had ostensibly signed. Virgil contacted an attorney and executed an affidavit stating that his signature on the trust deed was forged. After receiving this affidavit, Zions' counsel sent a letter to National American demanding payment pursuant to the title insurance policy. National American refused the claim. Zions filed suit to recover on the insurance policy. Before Zions' litigation was resolved, Virgil and Sara Olson filed a quiet title action against Zions to declare the deed void and to quiet title to their property. Virgil and Sara prevailed in that action. After the trial of Zions' action against National American, the trial court held for Zions and awarded Zions $54,000 in damages, $5,000 in attorney fees, and $94.70 in costs.

On appeal, National American challenges the ruling below on a number of grounds. It argues first that, under the terms of the contract of insurance, recovery is precluded because Zions had failed to ask Virgil and

Sara whether they had signed the trust deed. National American relies on a disclaimer in the policy providing that it "does not insure against loss or damage ... aris[ing] by reason of ... [a]ny facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof." National American argues that because the fact of the forgery was not a matter of public record and because Zions would have discovered the defect had it asked Virgil and Sara, the parties in possession of the land, whether they had signed the trust deed, Zions' failure to ask exempts National American from paying under the insurance policy.

The trial court held that the coverage exclusion does not impose a contractual duty on Zions to ascertain the validity of Virgil's and Sara's signatures. It found that unless Zions had actual knowledge of the title defect, namely, the forged signatures, National American was obligated to determine the state of the title and that forgery is a defect against which the policy insured. The trial court reasoned that Virgil's reluctance to sign the trust deed until he had spoken with Sara was not alone enough to raise a question about the validity of the signatures.

The standard of review of such findings must be noted at the outset. Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness. *E.g., Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985); *see, e.g., Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985). Factual findings, on the other hand, are upheld "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a); *accord Lemon v. Coates,* 735 P.2d 58, 60 (Utah 1987); *Webster v. Lehmer,* 742 P.2d 1203, 1206 (Utah 1987) (citing *Ashton v. Ashton,* 733 P.2d 147, 149–50 (Utah 1987)).

■ With these standards in mind, we conclude that the trial court was correct in holding that the insurance policy imposed no contractual duty on Zions to ask Virgil and Sara if they had actually signed the trust deed. The policy provision excluding coverage for loss or damage arising because of "facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof" appears intended to protect a title insurer from an unrecorded interest in the land. *See Coast Mutual Building–Loan Association v. Security Title Insurance & Guaranty Co.,* 14 Cal.App.2d 225, 230–31, 57 P.2d 1392, 1394 (1936). Virgil and Sara's interest was recorded and shown by public record when National American issued the policy. Nothing about this situation brought it within the intended scope of the exclusion. Therefore, Zions had no duty under the contract to ask Virgil and Sara if they had signed the trust deed.

■ The trial court was also correct in holding that Zions did not have any implied contractual obligation to ask Virgil and Sara if their signatures were forged. Under Utah case law, the insured is not required to perform the insurer's duty to ascertain the validity of the title. *Bush v. Coult,* 594 P.2d 865, 867 (Utah 1979). Because title insurance is in the nature of a warranty, *id.,* forgery is one of the defects that title insurance is intended to cover.

National American's second challenge to the ruling below is based on another disclaimer in the policy. National American appeals from the trial court's ruling that Zions could recover despite the policy exclusion denying coverage for "[d]efects ... not shown by the public records and not otherwise excluded from coverage but *known to the insured.*" (Emphasis added.) National American contends that this provision excludes defects within the constructive knowledge of the insured and challenges the trial court's finding that Zions did not have constructive knowledge of the forgery.

We think the trial court properly rejected National American's contention on this point for two reasons. First, as previously noted, we will not overturn a trial court's finding of fact unless it is clearly erroneous. Reviewing the record as a whole, we conclude that the trial court committed no such clear error in finding that Zions had neither actual nor constructive knowledge that the signatures were forged.

■ Second, even if the finding of no constructive knowledge were erroneous as a matter of contract construction, the assertion that the provision in question excludes defects of which the insured is constructively aware has no merit. The plain language of the exclusion requires that the defect be "known to the insured." And not even National American seriously contests the trial court's finding that Zions lacked actual knowledge of the defect. National American cites two cases in support of the claim that such exclusionary provisions do not require actual knowledge and that constructive knowledge or notice is sufficient. *Enterprise Timber, Inc. v. Washington Title Insurance Co.*, 76 Wash.2d 479, 457 P.2d 600 (1969); *Salt Lake, Garfield & Western Railway Co. v. Allied Materials Co.*, 4 Utah 2d 218, 291 P.2d 883 (1955). Neither is applicable because neither involves a contract which, by its terms, requires actual knowledge.

The simple answer to National American's position is that if something broader than actual knowledge was intended by this language, certainly the drafter, National American, could have included appropriate language. And, of course, "in case of ambiguity, uncertainty or doubt the terms of the policy will be construed strictly against the company and in favor of the insured." *Jorgensen v. Hartford Fire Insurance Co.*, 13 Utah 2d 303, 304, 373 P.2d 580, 581 (1962). We hold that actual knowledge of the defect was required.

National American's third claim on appeal is that an agency relationship existed between Jeffery Olson and Zions and that as a result, Jeffery's knowledge of the forgery should be imputed to Zions. This claim has been raised on appeal for the first time. Generally, we do not consider issues that were not presented to the trial court. *E.g., Bundy v. Century Equipment Co.*, 692 P.2d 754, 758 (Utah 1984); *Trayner v. Cushing*, 688 P.2d 856, 857 (Utah 1984); *Bangerter v. Poulton*, 663 P.2d 100, 102 (Utah 1983); *Franklin Financial v. New Empire Development Co.*, 659 P.2d 1040, 1044, 1045 (Utah 1983). National American argues that there is no sound policy reason for our not considering this issue. National American acknowledges that agency is generally a question of fact for the trial court, but contends that when the facts on which an issue may be determined are undisputed and those facts do not permit the drawing of conflicting inferences, all that remains is a legal question. Because we do not defer to trial courts' determinations of legal questions, National American contends that we are as well situated as the trial court to deal with the issue.

■ National American's position ignores one of the reasons for refusing to consider any matter for the first time on appeal, even a matter of law. Although we may not defer to a trial court's conclusion on a legal question, we certainly may derive great benefit from the trial judge's views on the issue and may be persuaded by those views. This provides ample justification for refusing to consider National American's claim.

But there is another reason for refusing National American's request: we conclude that the agency issue is not presented to us as a question of law, but as a question of fact which may not be determined on appeal. A court can find that an agency relationship exists only if the agent is shown to have been acting on behalf and subject to the control of the principal. *See, e.g., Wilkerson v. Stevens*, 16 Utah 2d 424, 426–27, 403 P.2d 31, 33 (1965); *Freed Finance Co. v. Preece*, 14 Utah 2d 409, 411–12, 385 P.2d 156, 158 (1963); *Butler v. Colorado International Pancakes, Inc.*, 510 P.2d 443, 445 (Colo.Ct.App.1973); 3 Am.Jur.2d *Agency* § 21 (1986); *cf. City Electric v. Dean Evans Chrysler–Plymouth*, 672 P.2d 89, 90 (Utah 1983) (appar-

ent authority exists only if principal knows of and acquiesces in agent's conduct).

On the record in this case, it is not indisputable that Jeffery Olson was acting on Zions' behalf and was subject to its control. It is true that when Jeffery did not produce his parents at the signing ceremony where the other pieces of collateral were deeded to Zions, an officer of Zions gave him the deed and asked that he return it executed. It might be argued as a matter of fact that this was for Zions' benefit and was done on Zions' behalf. On the other hand, Jeffery was receiving the benefit from 'Zions—it was forbearing from bringing action on his and his partner's unsecured loans on condition that they furnish collateral. Obtaining a deed to his parents' home was a necessary precondition to Jeffery and his partner's receiving this benefit. Viewed in this light, Jeffery could be found to have been acting on his own behalf or on behalf of his partner in securing the deed. Thus, the nature of the relationship between Jeffery and Zions is a factual issue best determined at the trial court. For that reason, and because of our general disinclination to decide issues presented for the first time on appeal, we refuse to pass on the agency question.[1]

National American's fourth challenge to the judgment against it is the claim that Zions failed to comply with the policy's proof-of-loss provision. The policy provides that

> proof of loss or damage, signed and sworn to by the insured claimant shall be furnished to the Company.... Such proof of loss or damage shall describe the defect in ... the title ... which constitutes the basis of loss or damage, and, when appropriate, state the basis of calculating the amount of such loss or damage.

The letter from Zions' counsel to National American described the defect in Zions' title and contained a copy of the title policy, a description of the insured property, and a copy of Virgil Olson's sworn affidavit of forgery. At trial, National American contended that this letter was insufficient because the notice of loss was not sworn and because it did not set out the amount of loss sustained by Zions.

The trial court rejected National American's claims. It found that although the letter was not sworn, it did describe the title defect and therefore substantially complied with the policy's proof-of-loss provision. In addition, the trial court noted that the policy required a statement of "the basis of calculating the amount of such loss or damage" only "when appropriate." The words "when appropriate" introduced uncertainty concerning the requirement's applicability which the trial court determined must be construed against the drafter, National American. Therefore, the trial court held that Zions should be relieved of that requirement.

■ On appeal, National American advances the same arguments presented to the trial court. It contends that the policy's proof-of-loss provision is clear and was not complied with. We concur with the trial court's finding of substantial compliance. "Substantial, as distinguished from strict, compliance [with] ... proof of loss [provisions] is all that is required." *Sutton v. Fire Insurance Exchange*, 265 Or. 322, 325, 509 P.2d 418, 419 (1973) (citing 14 G. Couch, R. Anderson & M. Rhodes, *Cyclopedia of Insurance Law* § 49A:20 (rev. 2d ed. 1982); 3 G. Richards & W. Freedman, *Richards on the Law of Insurance* § 547 (5th ed. 1952); W. Vance & B. Anderson, *Handbook on the Law of Insurance* 897–98 (3d ed. 1951)); *accord Anderson v. State Farm Fire & Casualty Co.*, 583 P.2d 101, 103 (Utah 1978); *Stew-*

---

1. The relationship between Zions and Jeffery vis-a-vis the collateralization of the loan may present a different agency question than does the relationship between Zions and Jeffery vis-a-vis National American, the insurer. The collateralization was important to Jeffery because without it, Zions would not forbear collecting the loans; obtaining a proper deed was important to Zions because it brought it within the protection of its policy with National American. Both perspectives are intertwined. This is precisely the sort of complex factual and legal relationship on which we need the findings and conclusions of a trial judge.

*art v. Commerce Insurance Co.,* 114 Utah 278, 288, 198 P.2d 467, 472 (1948). The purpose of the proof-of-loss provision is to give the insurer an adequate opportunity to investigate, to prevent fraud, and to form an estimate of its rights and liabilities before it is required to pay. *Sutton,* 265 Or. at 325, 509 P.2d at 419 (quoting 14 G. Couch, R. Anderson & M. Rhodes, *supra,* § 49A:3). Zions' letter did contain a sworn affidavit of forgery and did describe the title defect. That information allowed National American to make an intelligent estimate of its rights and liabilities under the policy and thus fulfilled the purpose of the proof-of-loss provision.

As for National American's claim that Zions' letter was required to fix the amount of loss, the trial court was correct in finding that the insurance policy's "when appropriate" requirement is ambiguous and should be construed against the insurance company.

National American's fifth claim is that the trial court improperly awarded attorney fees to Zions. Zions, on the other hand, claims that there is a contractual basis for the award and seeks to have it increased.

In its findings of fact, the trial court stated that National American "agreed to pay plaintiff's attorney's fees and other costs incurred in pursuing this claim against [National American]." In reviewing the matter, however, we have determined that the trial court's finding of an agreement to pay fees was, in fact, a legal conclusion based on its interpretation of a provision in the insurance policy. The labels attached to findings of fact or conclusions of law are not determinative. In *Diversified Equities, Inc. v. American Savings and Loan Association,* 739 P.2d 1133, 1136 (Utah Ct.App.1987), the Court of Appeals stated that "without regard to the labels used, when ... 'findings' proceed from stipulated facts ... the 'findings' are tantamount to conclusions of law, with the stipulation of facts being the functional equivalent of true findings of fact." We agree. It is fair to say that a finding of fact that is actually a conclusion of law will be treated as a conclusion of law, and a conclusion of law that is actually a finding of fact will be treated as a finding of fact. As noted above, a conclusion of law is reviewed for correctness. *E.g., Scharf v. BMG Corp.,* 700 P.2d at 1070.

We must therefore determine whether the trial court correctly interpreted the policy's attorney fees provisions. The policy provides:

> Subject to schedule B and the conditions and stipulations hereof, National American Title Insurance Company ... insures [Zions] ... against ... attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by [Zions] by reason of ... [a]ny defect in ... such title.

(Emphasis omitted.) Paragraph 6(b) of the conditions and stipulations provides:

> The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon an insured in litigation carried on by the Company for such insured, and all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company.

■ Paragraph 6(b) limits National American's liability to attorney fees incurred in litigation authorized by National American. This limitation can logically apply only to actions brought by Zions and is wholly inapplicable to actions defended by Zions; National American cannot, and does not, contend that the policy gives it the power to decide whether Zions may defend a suit brought against it by a third party. In fact, National American concedes that if it were obligated to defend Virgil and Sara Olson's quiet title action, Zions would be entitled to recover the costs of the defense, including attorney fees. Given the inapplicability of paragraph 6(b)'s limitations and the fact that National American's obligation to defend has been established, Zions is entitled to recover attorney fees incurred in defending Virgil and Sara's quiet title action.

■ There is, however, an additional element of the attorney fee issue. National American contends that the trial court also awarded Zions attorney fees it incurred in

suing National American. National American argues that paragraph 6(b) excludes payment of such fees under the policy and, therefore, that there is no contractual basis for the award. National American relies on *Espinoza v. Safeco Title Insurance Co.,* 598 P.2d 346, 348–49 (Utah 1979). In *Espinoza,* this Court found that under provisions essentially identical to those at issue in this case, there was no contractual basis for awarding an insured attorney fees it incurred in suing its insurer, even though the insurer was unsuccessful in defending its refusal to provide coverage. *Id.* Although we might question the result in *Espinoza,* that case directly confronted the issue and definitively construed the identical contract language. Under these circumstances, we decline to depart from *Espinoza.* Therefore, we must reverse the trial court's award of attorney fees to Zions to the extent that it represented the costs of prosecuting an action against National American for failing to provide coverage.

Although it does not affect the outcome of this appeal, it is worth noting that since *Espinoza* was decided, and after the decision below was rendered, we announced the existence of an implied contractual obligation to perform a first party insurance contract fairly and in good faith. *See Beck v. Farmers Insurance Exchange,* 701 P.2d 795, 800–01 (Utah 1985). Damages for breach of this implied covenant can include consequential damages. *Id.* at 801. Attorney fees incurred by an insured in suing its insurer because of such a breach would be recoverable consequential damages because they plainly are reasonably foreseeable by the parties at the time the contract is made. *See id.* Although Zions did not proceed against National American on this theory, it would arguably be available to others similarly situated, despite the language in the standard form contract, because the implied covenant announced in *Beck* cannot be contractually waived. *Id.* at 801 n. 4.

We remand this portion of the case to the trial court for the purpose of determining the amount of attorney fees to be awarded under the policy for defending the quiet title action.

National American's sixth and final argument is that Zions was estopped from bringing suit to recover under the policy because Zions created the situation leading to the forgery. Zions knew that Virgil Olson had refused to sign the trust deed, and Zions was well aware that it had threatened legal action against Jeffery Olson but, nevertheless, gave Jeffery the deed, thereby giving him the opportunity to commit fraud against the insurer.

Although National American pleaded estoppel in its answer, it did not argue estoppel to the trial court. In this respect, the instant case is identical to *Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667, 672 (Utah 1982). In that case, the answer contained a defense that was neither argued to the trial court nor supported by any evidence. In *Turtle Management,* we stated, "This Court will not consider on appeal issues which were not submitted to the trial court and concerning which the trial court did not have the opportunity to make any findings of fact or law." *Id.* (citing *Shayne v. Stanley & Sons, Inc.,* 605 P.2d 775, 776 (Utah 1980); *Lamkin v. Lynch,* 600 P.2d 530, 533 (Utah 1979); *Edgar v. Wagner,* 572 P.2d 405, 407 (Utah 1977); *State Road Commission v. Larkin,* 27 Utah 2d 295, 300, 495 P.2d 817, 821 (1972)). Similarly, we will not consider whether Zions is estopped from bringing suit against National American.

We have considered the parties' other contentions and find them to be without merit. The judgment is affirmed in all respects except the award of attorney fees, which is reversed. The case is remanded for the purpose of determining the amount of attorney fees to be awarded. Costs to respondent.

HALL, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur.