*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 51**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of NATHAN N. JARDINE, #081215

UTAH STATE BAR,
*Appellee*

*v.*

NATHAN N. JARDINE
*Appellant.*

No. 20130289
Filed June 19, 2015

Third District, Salt Lake
The Honorable Andrew H. Stone
No. 070913637

Attorneys:

Billy L. Walker, Adam C. Bevis, Salt Lake City, for appellee

Nathan N. Jardine, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE PARRISH, and JUDGE CHRISTIANSEN joined.

JUSTICE NEHRING did not participate herein due to his retirement; COURT OF APPEALS JUDGE MICHELE M. CHRISTIANSEN sat.

JUSTICE DENO G. HIMONAS became a member of the Court on February 13, 2015, after oral argument in this matter, and accordingly did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Nathan N. Jardine was suspended from the practice of law for eighteen months for violating numerous rules of professional conduct. Utah law allows for suspended attorneys to petition for reinstatement, however, and several years after being suspended,

Mr. Jardine availed himself of this opportunity by filing a petition for reinstatement in district court. The district court denied his petition, concluding that he failed to comply with six requirements imposed by the rule governing reinstatement.

¶2 We affirm the district court's denial of reinstatement because Mr. Jardine failed to comply with four of the rule's requirements. First, he practiced law within the State of Utah while he was suspended. Second, he failed to establish that he has the requisite honesty and integrity to practice law. Third, he failed to pass the Multistate Professional Responsibility Examination, and has not presented a "good and sufficient reason" for failing to do so. And finally, he failed to keep informed about recent developments in the law.

¶3 While ultimately affirming the district court's denial of reinstatement, we reverse the court's ruling that Mr. Jardine must reimburse the Utah State Bar $1,000 before he may be reinstated. Because the payment made by the Bar's fund for client protection to Mr. Jardine's former client cannot be traced to any violation of the professional rules by Mr. Jardine, there is no basis for concluding that he must reimburse the Bar.

¶4 Finally, we direct our rules committee to consider amending rule 14-525(e)(4) of the Supreme Court Rules of Professional Practice, which provides that a person seeking reinstatement must have the requisite honesty and integrity to practice law, to clarify what steps a person seeking reinstatement must take in order to establish honesty and integrity.

**Background**

¶5 In August 2010, Mr. Jardine was suspended from the practice of law for three years. He appealed his suspension to this court. In an opinion issued on March 9, 2012, we held that Mr. Jardine had violated numerous ethical rules, but reduced his suspension period from three years to eighteen months.[1] We issued a separate order that same day explaining that Mr. Jardine's suspension was complete and that he could begin the process of reinstatement.

¶6 Mr. Jardine filed a petition for reinstatement. The district court denied his petition because it concluded that he failed to comply with rule 14-525 of the Supreme Court Rules of Professional

---

[1] *In re Discipline of Jardine*, 2012 UT 67, ¶ 83, 289 P.3d 516.

Practice, which governs attorney reinstatement following a suspension of more than six months. Specifically, the court concluded that Mr. Jardine failed to comply with six of the rule's requirements.

¶7 The court concluded that Mr. Jardine violated rules 14-525(e)(1) and 14-525(e)(2) by engaging in the unauthorized practice of law while he was suspended. Before he was suspended, Mr. Jardine agreed to represent Jonathan Glodo. Mr. Glodo was an Alaskan resident who was involved in an automobile accident in Idaho. Because Mr. Jardine was not licensed in Idaho, all court filings were done through his brother, Joseph Jardine, who was licensed in Idaho. But Mr. Jardine concedes that he, not Joseph, performed almost all of the work on the case.

¶8 When Mr. Jardine was suspended in August 2010, the disciplinary order provided that he was

> enjoined and prohibited from practicing law in the State of Utah, holding himself out as an attorney at law, performing any legal services for others, giving legal advice to others, accepting any fee directly or indirectly for rendering legal services as an attorney, appearing as counsel or in any representative capacity in any proceeding in any Utah court or before any Utah administrative body as an attorney . . . , or holding himself out to others or using [his] name in any manner in conjunction with the words "Attorney at Law," "Counselor at Law," or "Lawyer . . . ."

The disciplinary order also noted that Mr. Jardine "may, with the consent of the client after full disclosure, wind up or complete any matters pending on the date of entry of the order."

¶9 Mr. Jardine never informed Mr. Glodo that he was suspended, nor did he wind up his participation in the matter. Instead, he continued to work on the case after he was suspended. For instance, he exchanged numerous text messages with Mr. Glodo regarding the case. Among other things, Mr. Jardine advised Mr. Glodo that the case was "worth good money," the "liability is great," and that he had "a great case." At one point, Mr. Glodo asked for an update on his case. Mr. Jardine told him that a lawsuit had been filed and that he was working on a demand letter that required his "special attention." On December 23, 2010, he sent that demand letter to Hartford Insurance Company. The letter states that Mr. Jardine represents Mr. Glodo, analyzes the company's liability and Mr. Glodo's damages, and proposes a monetary settlement. The

letter is printed on letterhead that lists Mr. Jardine's Utah address, but indicates he is licensed in California. The letter made no reference to Mr. Jardine's brother. Mr. Glodo ultimately terminated his relationship with Mr. Jardine after he learned of Mr. Jardine's disciplinary record. Mr. Glodo also filed an informal complaint against Mr. Jardine with the Office of Professional Conduct (OPC).

¶10  The district court concluded that by representing Mr. Glodo, Mr. Jardine violated two of rule 14-525's requirements. First, he violated rule 14-525(e)(1), which requires compliance "with the terms and conditions of all prior disciplinary orders," because his prior disciplinary order specifically prohibited him from practicing law in Utah. And second, he violated rule 14-525(e)(2), which directly prohibits the unauthorized practice of law, by continuing to practice law while suspended.

¶11  Third, the district court denied reinstatement because Mr. Jardine had not demonstrated the requisite honesty and integrity required by rule 14-525(e)(4). As a basis for this conclusion, the court noted that "[t]he Office of Professional Conduct demonstrated substantial debts owed by Jardine, including taxes, child support and a civil judgment for which a Bench Warrant was issued."

¶12  Fourth, the district court concluded that Mr. Jardine failed to show that he complied with rule 14-525(e)(5) by keeping informed about recent developments in the law. Mr. Jardine argued that he complied with this rule by working as a paralegal, but the court concluded that the rule "at a minimum, . . . demands efforts comparable to those required of practicing attorneys, which is something more than merely being engaged in the practice of law."

¶13  Fifth, the court denied reinstatement because Mr. Jardine failed to take and pass the Multistate Professional Responsibility Examination (MPRE).

¶14  And finally, the district court denied reinstatement because Mr. Jardine failed to reimburse the Lawyers' Fund for Client Protection (Fund) for $1,000 that was paid to one of his former clients to compensate the client for Mr. Jardine's allegedly unreasonable fee.

¶15 Mr. Jardine now appeals the district court's denial of reinstatement. We have jurisdiction under Utah Code section 78A-3-102(3)(c).

**Standard of Review**

¶16 In attorney discipline cases, "we review the trial court's findings of facts under the clearly erroneous standard, [but] we reserve the right to draw different inferences from the facts than

those drawn by the trial court."[2] And "[w]ith respect to the discipline actually imposed, our constitutional responsibility requires us to make an independent determination as to its correctness."[3]

## Analysis

¶17 We conclude that Mr. Jardine failed to comply with four requirements imposed by rule 14-525 of the Supreme Court Rules of Professional Practice. Specifically, he failed to comply with the provisions requiring him to (1) comply with prior disciplinary orders, (2) demonstrate the requisite integrity to practice law, (3) pass the MPRE, and (4) keep informed about recent developments in the law. Because he failed to comply with these requirements, we affirm the district court's denial of reinstatement.

¶18 We also affirm the district court's denial of a continuance because granting Mr. Jardine additional time to pass the MPRE and complete continuing legal education classes (CLE) would have had no effect on the outcome of his reinstatement petition. Other deficiencies with his petition would have remained even if he had passed the MPRE and taken CLE courses, including his prior unauthorized practice of law and failure to establish the requisite honesty or integrity to practice law.

¶19 While we affirm the district court's denial of reinstatement, we reverse the portion of the court's ruling requiring Mr. Jardine to reimburse the Bar for $1,000 that it paid to one of his former clients. The fee Mr. Jardine charged that client was not in violation of any rule of professional conduct, and so there is no basis for requiring him to reimburse the Bar.

### I. Mr. Jardine Failed to Comply with the Disciplinary Order

*A. Mr. Jardine Engaged in the Unauthorized Practice of Law in Utah and Therefore Violated the Disciplinary Order*

¶20 The OPC contends that Mr. Jardine should not be reinstated because he violated rule 14-525(e)(1) of the Supreme Court Rules of Professional Practice by engaging in the unauthorized practice of law while he was suspended. Subsection (e)(1) provides that a person seeking reinstatement must "fully compl[y] with the terms

---

[2] *In re Discipline of Ince*, 957 P.2d 1233, 1236 (Utah 1998) (citation omitted).

[3] *Id.*

and conditions of all prior disciplinary orders except to the extent they are abated by the district court." The disciplinary order imposing Mr. Jardine's suspension expressly prohibited him "from practicing law in the State of Utah" while suspended.

¶21 We have never precisely defined "the practice of law," and have noted that "[w]hat constitutes the practice of law in any given situation requires a case-by-case decision."[4] But we have observed that the practice of law

> is generally acknowledged to involve the rendering of services that require the knowledge and application of legal principles to serve the interests of another with his consent. It not only consists of performing services in the courts of justice throughout the various stages of a matter, but in a larger sense involves counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities. It also includes the preparation of contracts and other legal instruments by which legal rights and duties are fixed.[5]

Under this general definition, there is no doubt that Mr. Jardine engaged in the practice of law during the time he was suspended. Most notably, he utilized his "knowledge . . . of legal principles" to draft a demand letter on behalf of Mr. Glodo. Drafting a letter that analyzes another's legal liability and proposes a monetary settlement is at the core of legal representation, and, in any case, surely falls within "counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities." Moreover, he exchanged numerous text messages with Mr. Glodo advising him about the case and the potential for recovery.

¶22 Mr. Jardine argues that even if his actions constituted the practice of law, he nevertheless did not violate rule 14-525(e)(1) because he was not practicing law in Utah. But as we have discussed, the disciplinary order expressly prohibited Mr. Jardine from

---

[4] *Utah State Bar v. Summerhayes & Hayden, Pub. Adjusters*, 905 P.2d 867, 870 (Utah 1995).

[5] *Id.* at 869–70 (citations omitted); *see also* SUP. CT. R. PROF'L PRACTICE 14-802(b)(1) (defining "[t]he 'practice of law'" as "the representation of the interests of another person by informing, counseling, advising, assisting, advocating for or drafting documents for that person through application of the law and associated legal principles to that person's facts and circumstances").

"performing any legal services for others" or "giving legal advice to others" within the State of Utah. And all of the work Mr. Jardine performed on Mr. Glodo's case was performed in Mr. Jardine's Utah office. His communications with Mr. Glodo, including the text messages that he sent regarding the viability of Mr. Glodo's claim and the prospect for recovery, were made from Utah. Moreover, the demand letter he sent to Hartford Insurance Company listed his Utah address. So the fact that Mr. Glodo's case originated, and was later filed, in Idaho is really of no consequence because Mr. Jardine engaged in the practice of law within Utah contrary to the disciplinary order. Accordingly, we affirm the district court's holding that Mr. Jardine failed to comply with his prior disciplinary order.

### B. The District Court's Order Does Not Violate Rule 52 of the Utah Rules of Civil Procedure

¶23 Mr. Jardine also challenges the district court's ruling on the unauthorized-practice-of-law issue on procedural grounds. Rule 52 of the Utah Rules of Civil Procedure provides, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58A . . . ." Mr. Jardine argues that the district court failed to comply with this rule by not separately stating its findings of fact and conclusions of law. But this is simply not the case. The court's order does separately list the court's findings of fact and conclusions of law. The mere fact that language in the court's "findings" section also contains mixed determinations, such as the court's rejection of "Jardine's argument that his conduct did not amount to the unauthorized practice of law," is of no consequence because, as we have previously noted, "[t]he labels attached to findings of fact or conclusions of law are not determinative."[6]

¶24 He also argues that the court's order is not supported by enough subsidiary facts to show how the court reached its ultimate conclusion. While "the trial court's findings must be sufficiently detailed and include enough subsidiary facts to clearly show the evidence upon which they are grounded," the court "is not required

---

[6] *Zions First Nat'l Bank v. Nat'l Am. Title Ins. Co.*, 749 P.2d 651, 656 (Utah 1988); *see also Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 42 n.8, 306 P.3d 799 (concluding that an ALJ's characterization of a finding of fact as a conclusion of law was not determinative).

to recite each" intermediate step in its "reasoning that leads to its conclusions."[7] The court's order in this case suffices under this standard. Finding number four recites the fact that Mr. Jardine represented Mr. Glodo from his Utah office. It notes the court's rejection of Mr. Jardine's argument that this representation did not constitute the unauthorized practice of law. And it observes that by practicing law Mr. Jardine violated a prior disciplinary order. On this basis, among others, the court concluded (in a separate section of its order) that Mr. Jardine failed to satisfy rule 14-525(e)'s requirements. So while the court's order *could* have been more detailed, it certainly allows for "meaningful appellate review."[8]

¶25 And in any event, Mr. Jardine's procedural argument mirrors arguments that we have previously rejected. For instance, we have rejected arguments that conclusory findings of fact issued by a screening panel of the Utah Supreme Court's Ethics and Discipline Committee violate due process, the Utah Rules of Lawyer Discipline and Disability, and our caselaw.[9] In so doing, we have observed that "[b]ecause we are charged with the power to discipline attorneys, conclusory findings of fact do not present the same difficulty in the attorney discipline context as they do in the administrative context."[10] That reasoning is equally applicable here. Because we are charged with regulating the practice of law,[11] and because we review attorney-discipline sanctions under a de novo standard of review, the fact that an attorney-discipline order does not perfectly comply with rule 52 of the Utah Rules of Civil Procedure does not render a disciplinary action invalid.

¶26 In summary, we affirm the district court's decision that Mr. Jardine violated rule 14-525(e)(1) because his representation of Mr. Glodo while he was suspended constituted the unauthorized

---

[7] *State ex rel. S.T. v. State*, 928 P.2d 393, 398 (Utah Ct. App. 1996) (internal quotation marks omitted).

[8] *Id.*

[9] *Long v. Ethics & Discipline Comm. of the Utah Supreme Court*, 2011 UT 32, ¶ 42, 256 P.3d 206.

[10] *Id.* ¶ 41.

[11] *See* UTAH CONST. art. VIII, § 4 ("The Supreme Court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law.").

practice of law within Utah in direct violation of his prior disciplinary order.[12]

## II. Mr. Jardine Failed to Establish That He Has the Requisite Integrity to Practice Law

¶27 In reinstatement proceedings, the person seeking reinstatement bears the "burden of demonstrating by a preponderance of the evidence that [he or she] has met each of the criteria in paragraph (e) or, if not, that there is good and sufficient reason why [he or she] should nevertheless be reinstated."[13] One of subsection (e)'s criteria is that the person seeking reinstatement show that he or she "has the requisite honesty and integrity to practice law."[14] The district court ruled that Mr. Jardine failed to meet his burden in this regard.

¶28 The district court's analysis focused on three debts owed by Mr. Jardine—a tax lien, outstanding child support, and a civil judgment. The court observed that "[w]hile debts alone do not establish a lack of honesty or integrity, the debts in this case justify requiring Jardine to show either that they are wholly in dispute, that he is unable to make any payments on them, or that he has made some reasonable effort to begin paying them. Jardine claims that he is negotiating these bills, but has not shown any of the above."

¶29 We affirm the district court's conclusion that Mr. Jardine failed to establish that he has the requisite honesty and integrity to practice, although we do so on different grounds. The district court's ruling focused on Mr. Jardine's failure to sufficiently address his debts. The court's conclusion has some support. For instance, at the hearing on his reinstatement petition, Mr. Jardine acknowledged that he has an outstanding civil judgment, but failed to give a specific explanation for why that judgment remains unpaid. He also acknowledged at that hearing that he owes over $40,000 in child support.

¶30 On the other hand, there is some evidence that cuts against the court's conclusion that Mr. Jardine did not sufficiently address

---

[12] We note that OPC conceded during oral argument that Mr. Jardine's unauthorized practice of law during his previous period of reinstatement cannot be used against him in a subsequent petition for reinstatement.

[13] SUP. CT. R. PROF'L PRACTICE 14-525(g).

[14] *Id.* 14-525(e)(4).

his debts. For example, the only record evidence regarding the tax lien indicates that the lien has been set aside. Also, Mr. Jardine testified at the hearing that he pays approximately $1,000 per month in child support and that he has filed a motion seeking a reduction in the amount owed based on his lack of income. He also pointed out that in 2010 he earned less than $16,000 and in 2011 he earned $8,603. If accurate, these income amounts suggest that Mr. Jardine uses nearly all of his income to pay his debts. Mr. Jardine neglected, however, to provide a summary of any other assets he has that could be used to pay his debts. Given the conflicting evidence, the question of whether Mr. Jardine sufficiently addressed his debts is a close one.

¶31 But we need not decide whether Mr. Jardine's debts demonstrate a lack of honesty or integrity, because, even ignoring his debts, we conclude that he failed to show by a preponderance of the evidence that he has the requisite honesty and integrity to practice law.

¶32 During the reinstatement-petition hearing, Mr. Jardine offered little evidence that he had the requisite honesty and integrity to practice law. He offered only the testimony of a paralegal at his office and the testimony of his sister. On direct examination, the paralegal was asked whether he ever saw Mr. Jardine engage in "any dishonesty of any sort . . . in any of the business deals that [he] saw [Mr. Jardine] involved in?" The paralegal responded "I did not." He was then asked whether he had "ever known [Mr. Jardine] to lie to you or be dishonest with you in any way?" The paralegal responded by saying "[n]o." Finally, the paralegal was asked whether Mr. Jardine generally kept his word. He responded by saying "[y]es." Mr. Jardine next called his sister to testify. On direct examination by Mr. Jardine, she testified that "[i]t has been my experience in both business and personal that you have always tried to be right with everyone you know. Which would be honest and integritous [*sic*]. And if you feel like you have made an error that you would correct that error." These few quoted sentences constitute the entirety of Mr. Jardine's affirmative showing of his honesty and integrity.

¶33 Regardless of the effect of Mr. Jardine's outstanding debts on the question of honesty and integrity, conclusory testimony from a coworker and family member is insufficient to demonstrate by a preponderance of the evidence that he has the requisite honesty and integrity to practice law. While rule 14-525(e)(4) could more precisely spell out what a person seeking reinstatement must show to

establish the requisite honesty and integrity to practice law,[15] the evidence offered by Mr. Jardine in this case falls well short of the preponderance of the evidence standard. He offered no testimony from former clients, other members of the bar, business associates, community members, or any other similarly objective person. The only testimony he offered came from a person to whom he was arguably a direct superior and a family member. And while this testimony is not necessarily irrelevant, it is hardly the type of objective testimony one might get from a disinterested third party.[16] On this basis, we affirm the district court's ruling that Mr. Jardine

---

[15] Rule 14-525(e)(4) offers little guidance to reinstatement candidates regarding how to sufficiently establish the requisite honesty or integrity to practice law. The rule is more helpful to readmission candidates because it directs them to "appear before the Bar's Character and Fitness Committee and cooperate in its investigation of the respondent." *Id.* The lack of guidance provided by the rule is not concerning in this case, given the fact that Mr. Jardine presented almost no objective evidence indicating he has the requisite honesty or integrity to practice law. But because this issue could raise concerns in future cases, we direct our rules committee to consider amending the rule to provide more specific guidance to reinstatement candidates regarding steps such candidates should take to sufficiently establish that they have the requisite honesty and integrity to practice law.

[16] The rules governing first-time bar applicants recognize this principle by requiring applicants to submit six character references, none of which can come from "persons related to [the applicant] by blood or marriage, romantic partners, law school classmates from the same graduating class, or current employees." *See* Filing Instructions and Information Utah State Bar Admission Application, at 10, *available at* http://www.utahbar.org/wp-content/uploads/2014/10/Filing_Instructions_and_Info_2015.doc (last accessed May 26, 2015). We recognize that there are differences in the rules governing first-time bar applicants and reinstatement candidates. For instance, first-time bar applicants have the burden of proving character and fitness by clear and convincing evidence, SUP. CT. R. PROF'L PRACTICE 14-708(a), while reinstatement candidates required to prove honesty and integrity by only a preponderance of the evidence. *Id.* 14-525(g). But these differences do not change the common-sense notion that family members and employees may not provide the most objective evaluation of a person's character.

failed to meet his burden of establishing that he has the requisite honesty and integrity to practice law.

### III. Mr. Jardine Failed to Establish That He Kept Informed About Recent Developments in the Law While He was Suspended

¶34 The district court also denied Mr. Jardine reinstatement because it concluded that while suspended he had not kept informed about recent developments in the law. Rule 14-525(e)(5) requires a person seeking reinstatement to show that he or she "has kept informed about recent developments in the law and is competent to practice."

¶35 Mr. Jardine argues that he kept informed about recent developments in the law by working as a paralegal at his brother's law office and that the applicable rule does not require suspended attorneys to take CLE classes. He also argues that he satisfied the requirement by "help[ing] make new law in the State" through his advocacy in his prior disciplinary case. We reject each of these arguments.

¶36 First, working as a paralegal is not alone enough to satisfy rule 14-525(e)(5). The district court correctly observed that the rule, "at a minimum, . . . demands efforts comparable to those required of practicing attorneys, which is something more than merely being engaged in the practice of law." Under the rules of professional conduct, licensed attorneys cannot satisfy the requirement to take legal-education courses by merely practicing law.[17] Similarly, reinstatement candidates cannot show they kept informed about recent developments in the law merely by practicing as a paralegal. So while Mr. Jardine is correct that rule 14-525(e)(5) does not require that a reinstatement candidate take CLE classes, he must at least show that he made some attempt at engaging in legal education. Because he has failed to make any such showing, we conclude that he has not complied with rule 14-525(e)(5).

¶37 Mr. Jardine's second argument is especially unpersuasive. He argues that he kept informed about recent developments in the law by representing himself in prior disciplinary proceedings. This argument is plainly wrong. Representing oneself in a disciplinary proceeding does not absolve a reinstatement candidate from the obligation to keep informed about recent developments in the law.

---

[17] *See* SUP. CT. R. PROF'L PRACTICE 14-404(a) (requiring active status lawyers to "complete, during each two fiscal year period . . . , a minimum of 24 hours of accredited CLE").

Instead, the fact that an attorney is subject to discipline suggests just the opposite—that the attorney needs the benefit legal-education programs.

¶38  Rule 14-525(e)(5) requires Mr. Jardine to show how he has kept informed about recent developments in the law, and because he did not do so we affirm the district court's ruling that he failed to comply with the rule.

### IV. Mr. Jardine Has Not Demonstrated a "Good and Sufficient Reason" for His Failure to Take the MPRE

¶39 Rule 14-525(e)(6) provides that attorneys who are suspended for one year or more must pass the Multistate Professional Responsibility Examination (MPRE) before they may be reinstated to practice. This requirement, like all of the requirements for reinstatement, is subject to an exception–where the person seeking reinstatement can "present[] good and sufficient reason" for not meeting the requirement.[18] The district court observed that Mr. Jardine did not take the MPRE and concluded that he had not established a "good and sufficient reason" for failing to do so.

¶40  Mr. Jardine argues that he should not be required to pass the MPRE because he was involved in a prior disciplinary matter that ultimately resulted in an opinion from this court. He argues that he submitted over 110 pages of briefing to the court, which analyzed approximately fifteen ethical rules.

¶41 Mr. Jardine's argument on this point is similar to his argument we reject above regarding his failure to keep informed about recent developments in the law. We reject his argument here for similar reasons. Being subject to discipline and defending one's self does not constitute a "good and sufficient reason" for failing to comply with rule 14-525(e)(6)'s requirement to pass the MPRE. In fact, the better argument is that attorneys who are subject to discipline have an even greater need to pass the MPRE. Moreover, as Mr. Jardine points out, his briefing in his prior disciplinary case analyzed approximately fifteen ethical rules. Currently, there are over fifty rules governing lawyers in the Utah Rules of Professional Conduct, and Mr. Jardine, if readmitted, would need to comply with all of those rules, not just the fifteen he analyzed in his briefs. In short, we should conclude that Mr. Jardine has not established a "good and sufficient reason" for not passing the MPRE.

---

[18] Sup. Ct. R. Prof'l Practice 14-525(e).

## V. Mr. Jardine Does Not Need to Reimburse the Client Security Fund to be Reinstated

¶42 Mr. Jardine was initially suspended for, among other things, violating rule 1.5 of the Utah Rules of Professional Conduct, which governs fees, for charging a client $10,000 to represent her in criminal and divorce proceedings.[19] But on appeal, this court concluded that this fee did not provide a basis for discipline because it was not excessive.[20] The Utah State Bar later paid Mr. Jardine's client $1,000 out of the Lawyers' Fund for Client Protection (Fund) to partially compensate her for Mr. Jardine's allegedly unreasonable fee. Mr. Jardine never reimbursed the Fund for this payment. The district court held that his failure to reimburse the Fund disqualified him from reinstatement. We reverse and conclude that Mr. Jardine does not need to reimburse the Fund to be reinstated because he did not charge an unreasonable fee.

¶43 Mr. Jardine argues that he should not have to reimburse the Fund because, as this court held, the fee he charged his client was not excessive. The district court appears to have recognized our holding on this point, but nonetheless concluded that Mr. Jardine must repay the Client Security Fund to be reinstated:

> The Bar's Fund For Client Protection paid $1,000 on account of Jardine's conduct. Jardine has failed to show that this was not the case, relying solely on the Supreme Court's determination that the Office had failed to prove the underlying fee for which the fund partially reimbursed the client was excessive. At this stage, it is Jardine's burden to show that the repayment by the fund cannot properly be said to have been on account of his conduct, and he has failed to make the showing. It is undisputed that he has not reimbursed the Fund as required by 14-525(e)(8).

¶44 Rule 14-525(e)(8) of the Supreme Court Rules of Practice provides that a person seeking reinstatement must "fully reimburse[] the Bar's Laywers' Fund for Client Protection for any amounts paid on account of the respondent's conduct." The district court's ruling misconstrues this rule by requiring a person to reimburse the Fund in cases where that person committed no misconduct that caused a client to incur a loss. But rule 14-902(a) explains that the purpose of

---

[19] *Utah State Bar v. Jardine*, 2012 UT 67, ¶ 44, 289 P.3d 516.

[20] *Id.* ¶ 46.

the Fund is to "reimburse clients for losses caused by the dishonest conduct committed by lawyers." In this case, this court concluded in our prior opinion that Mr. Jardine did not engage in any misconduct in charging his client the $10,000 fee, so that fee could not have provided a basis for the Bar to compensate Mr. Jardine's client.

¶45 Reading rule 14-525(e)(8) as the district court did effectively grants the Bar unilateral authority to force an attorney to reimburse the Fund regardless of whether the attorney engaged in misconduct that caused a client to incur a loss. This is an incorrect interpretation of the rule. Properly read, the rule requires reimbursement only in cases where the person seeking reinstatement committed some misconduct that resulted in a client incurring a loss. In this case, Mr. Jardine did not charge his client an unreasonable fee, as this court concluded in our earlier opinion, and so there is no basis for concluding that he must reimburse the Fund. We accordingly reverse the district court's ruling on this issue.[21]

## VI. The District Court Did Not Abuse Its Discretion in Denying Mr. Jardine a Continuance

¶46 The final issue on appeal is whether the district court abused its discretion in denying Mr. Jardine's motion for a continuance. After the district court held a hearing on Mr. Jardine's motion for reinstatement, Mr. Jardine asked the court for a continuance so he could take the MPRE and attend CLE classes. The district court denied his request, reasoning that even if a continuance would allow him to take the MPRE and attend CLE classes, it would not cure his failure to comply with other reinstatement requirements.

¶47 We conclude that the court did not abuse its discretion in denying Mr. Jardine a continuance. Mr. Jardine's continuance motion was premised entirely on his need for additional time to take the MPRE and attend CLE classes. But even assuming that he would have done those things had the court granted him a continuance, he would still have been denied readmission due to his unauthorized practice of law and failure to demonstrate the requisite integrity to practice law. Because of this, the district court did not abuse its discretion in denying his motion for a continuance.

---

[21] We note that the OPC conceded this issue in its opening brief by stating "at this point the OPC does not contest Jardine's argument concerning repayment."

**Conclusion**

¶48  We affirm the district court's denial of Mr. Jardine's petition for reinstatement because he failed to comply with four requirements imposed by rule 14-525 of the Supreme Court Rules of Professional Practice. Specifically, he failed to comply with the provisions requiring him to (1) comply with prior disciplinary orders, (2) demonstrate the requisite integrity to practice law, (3) pass the MPRE, and (4) keep informed about recent developments in the law. Although we affirm the district court's ultimate denial of reinstatement, we conclude that the court erred in requiring Mr. Jardine to reimburse the Utah State Bar for $1,000 that the Bar paid to one of his former clients.

¶49  We also conclude that the district court did not abuse its discretion when it denied Mr. Jardine a continuance so that he could take the MPRE and attend CLE classes. We note, however, that because it has been over one year since the district court issued its ruling denying reinstatement, Mr. Jardine is now eligible to reapply for reinstatement in accordance with rule 14-525(h) of the Supreme Court Rules of Professional Practice.

_____