ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
|! This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Clarence T. Nalls, Jr., an attorney licensed to practice law in Louisiana, but currently suspended from practice.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history.
In 2006, respondent and the ODC filed a joint petition for consent discipline with this court, proposing that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to his successful completion of a two-year period of probation with conditions, for filing and pursuing a frivolous lawsuit on behalf of a client. On April 17, 2006, we accepted the petition for consent discipline and imposed a fully deferred one year and one day suspension, subject to a two-year period of probation. Our opinion specifically provided that “[a]ny failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.” In re: Nalls, 06-0257 (La.4/17/06), 926 So.2d 491 (“Nalls I”) (emphasis added). Respondent’s probationary period commenced October 1, 2006.
^Subsequently, the ODC learned that between August 2007 and November 2007, respondent may have committed misconduct by failing to turn over an original will to the attorney for the named executor of the will. As a result, the ODC filed a motion and rule to revoke respondent’s probation.
The matter proceeded to a hearing before an adjudicative panel of the disciplinary board. Following the hearing, the board recommended that respondent’s probation be revoked and he be suspended from the practice of law for one year and one day. Upon review, we revoked respondent’s probation and ordered that “the previously deferred one year and one day suspension imposed in In re: Nalls, 06-0257 (La.4/17/06), 926 So.2d 491, is hereby made immediately executory.” In re: Nalls, 08-2409 (La.1/16/09), 998 So.2d 697 (“Nalls II”) (emphasis added). Respondent applied for rehearing from this judgment. We denied rehearing on March 13, 2009. In re: Nalls, 08-2409 (La.3/13/09), 5 So.3d 110. Respondent has not yet sought reinstatement from this suspension and, thus, remains suspended from the practice of law.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
*1014 UNDERLYING FACTS
Count I — The Unauthorized Practice of Law Matter
As discussed above, respondent’s suspension in Nalls II became effective on January 16, 2009.[1] On this date, respondent was already representing Wade Garner in a criminal matter and had filed a Petition for Certiorari with the United States Supreme Court. Respondent continued to correspond with Mr. Garner about | ¡¡the status of his case until at least April 14, 2010. Respondent also did not provide Mr. Garner with his file or an accounting of insurance proceeds Mr. Garner had entrusted to him as his attorney.
Additionally, on February 23, 2009, over one month after his suspension became effective, respondent agreed to represent Linder Shields in a wrongful termination case and collected a $2,500 advance fee. Respondent did not inform Ms. Shields of his suspension from the practice of law. Instead, respondent informed her that other attorneys with whom he was associated would make court appearances for him on her behalf. On June 11, 2011, Ms. Shields called the Louisiana State Bar Association and learned that respondent was suspended from the practice of law.
Count II — The Gamer Matter
During respondent’s representation of Mr. Garner, Mr. Garner’s wife passed away. Subsequently, Mr. Garner received life insurance benefits from Prudential Insurance, which proceeds were paid in the form of a checking account with an initial balance of $38,000. Prudential Insurance provided blank checks to Mr. Garner so he could access the funds in the account.
Because Mr. Garner was incarcerated at the time, he gave respondent power of attorney, and the Prudential Insurance proceeds were sent to respondent for safekeeping. However, respondent did not maintain any records of his handling of the funds. Respondent wrote checks drawn on the Prudential checking account payable to cash as follows: check no. 102 for $12,775 on April 19, 2007; check no. 103 for $2,000 on May 10, 2007; check no. 104 for $2,000 on June 1, 2007; check no. 105 for $4,000 on June 19, 2007; and check no. 106 for $2,400 on August 27, 2007. Other than documentation for administrative services on May 8, 2007, which may account for some or all of the May 10, 2007 check, there was not |4proper documentation showing the purpose of the checks, and the cashed checks were not deposited into respondent’s client’s trust account. Because of the lack of documentation, the ODC’s auditor concluded that respondent converted between $12,405.34 and $13,105.34 of Mr. Garner’s insurance proceeds.
DISCIPLINARY PROCEEDINGS
In September 2012, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(d) (failure to timely remit funds to a client or third person), 1.16(d) (obligations upon termination of the representation), 5.5(a) (engaging in the unauthorized practice of law), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in *1015 conduct involving dishonesty, fraud, deceit, or misrepresentation). Additionally, the ODC alleged that respondent’s conduct violated Supreme Court Rule XIX, § 28(A)(1)(2) (maintaining clearly identified trust accounts in financial institutions).
Respondent answered the formal charges, essentially denying any misconduct. He also filed a motion to dismiss the formal charges based on his belief that there was not clear and convincing evidence of misconduct on his part. The hearing committee chair denied the motion, and the matter proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee found that respondent did not cease the practice of law immediately upon receiving notification of the court’s January 16, 2009 order in \ ¿Nalls II. He also failed to inform Mr. Garner and Ms. Shields of his suspension and accepted advance attorney’s fees from Ms. Shields during his suspension.
Furthermore, respondent did not provide Mr. Garner with either a copy of his file or a proper accounting of his funds. For example, respondent did not account for the legal fees he charged Mr. Garner. Respondent also failed to maintain Mr. Garner’s funds in a client trust account or acceptable escrow account and did not properly maintain financial records of said funds.
Based on these facts, the committee determined that respondent violated Rules 1.15(d), 1.16(d), 5.5(a), and 8.4(c) of the Rules of Professional Conduct in Count I and Rules 1.15(a) and 1.15(d) in Count II. Additionally, the committee determined that respondent violated Supreme Court Rule XIX, § 28(A)(1)(2) in Count II. The committee did not address the alleged violations of Rules 8.4(b) and 8.4(c) with respect to Count II. The committee also determined that respondent negligently violated duties owed to his clients.
In aggravation, the committee found a prior disciplinary record, a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law (admitted 1982). The committee found no mitigating factors present.
After finding that the facts of this case do not warrant disbarment, the committee recommended that respondent be suspended from the practice of law for three years.
Both respondent and the ODC filed objections to the hearing committee’s report and recommendation. Respondent argued that he should receive no discipline or, in the alternative, should receive no more than a public reprimand. The ODC argued that either disbarment or permanent disbarment is warranted.

_J^Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous, with a few exceptions related to the ODC’s audit of Mr. Garner’s insurance proceeds. Notably, based on the testimony and the documentary evidence, the board determined that the portion of the $88,000 in proceeds that could not be accounted for was $9,899.50, as opposed to the $12,405.34 to $13,105.34 found to be unaccounted for by the ODC’s auditor.
Based on these findings, the board determined that respondent violated Rules 1.15(d), 1.16(d), 5.5(a), and 8.4(c) of the Rules of Professional Conduct in Count I. In Count II, the board determined that respondent violated Rule 1.15(a) but not Rules 1.15(d), 8.4(b), or 8.4(c). The board *1016 also determined that respondent violated Supreme Court Rule XIX, § 28(A)(1)(2).
The board further determined that respondent knowingly, if not intentionally, violated duties owed to his clients and the legal profession. Respondent caused serious harm to Mr. Garner by failing to account for approximately $10,000 of his funds. Respondent also harmed Ms. Shields in that his failure to disclose his suspension from the practice of law appears to have contributed to a delay, if not neglect, of her legal matter. Furthermore, respondent harmed the legal profession by continuing to represent himself as an attorney authorized to practice law after his suspension. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
In aggravation, the board found the following factors: a prior disciplinary record, a dishonest or selfish motive (with respect to the unauthorized practice of law), a pattern of misconduct, refusal to acknowledge the wrongful nature of the 17conduct, vulnerability of the victim, and substantial experience in the practice of law. The board found no mitigating factors present.
After considering this court’s prior jurisprudence addressing similar misconduct, as well as the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, the board recommended that respondent be disbarred. The board also recommended that respondent provide an accounting and restitution to Mr. Garner.
Both respondent and the ODC filed objections to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of this matter indicates that respondent engaged in the unauthorized practice of law following his suspension, failed to inform Mr. Garner and Ms. Shields of his suspension, collected a fee from Ms. Shields following his suspension, failed to provide Mr. Garner with a copy of his file upon request, and failed to properly manage and account for Mr. Garner’s funds. Given this | Rmisconduct, respondent violated the Rules of Professional Conduct and Supreme Court Rule XIX, § 28(A)(1)(2) as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and *1017 mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We find respondent knowingly, if not intentionally, violated duties owed to his clients and the legal profession. As an attorney with substantial experience in the practice of law, respondent should have known that his conduct was improper, especially with respect to his failure to notify his clients and opposing counsel of his suspension and his mishandling of Mr. Garner’s insurance proceeds. Furthermore, respondent caused substantial harm to Mr. Garner in that he is unable to account for almost $10,000 of Mr. Garner’s funds. He also caused harm to the legal profession and potential harm to Ms. Shields. Under the circumstances, we find the applicable baseline sanction in this matter is disbarment.
The record supports the following aggravating factors: a prior disciplinary record, a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. There are no mitigating factors present.
Turning to the issue of an appropriate sanction, the most serious misconduct relates to respondent’s unauthorized practice of law. In this area, our jurisprudence focuses on the attorney’s state of mind. When the authorized practice of law is the |9result of negligence, we generally impose a suspension. For example, in In re: Jackson, 02-3062 (La.4/9/03), 843 So.2d 1079, a suspended attorney sat in on two depositions and did not inform the other parties that he was suspended from the practice of law. During one of the depositions, the suspended attorney asked several questions of the deponent. For this misconduct, we imposed a two-year suspension with all but one year and one day deferred.
However, when an attorney intentionally engages in the unauthorized practice of law with clear disregard of the authority of this court, we have consistently found such a violation warrants a sanction of disbarment or permanent disbarment. For example, in In re: Lindsay, 07-1813, p. 4 (La.3/7/08), 976 So.2d 1261, 1263, we stated:
It is well settled that the unauthorized practice of law by a suspended or disbarred attorney is very serious misconduct. In re: Jackson, 02-3062 (La.4/9/03), 843 So.2d 1079. In general, when the attorney has manifested a conscious intent to flout the authority of this court by practicing after being prohibited from doing so, we have not hesitated to impose disbarment. See, e.g., In re: Jones, 99-1036 (La.10/19/99), 747 So.2d 1081 (attorney disbarred for engaging in the unauthorized practice of law on four occasions, after being suspended in the past for similar misconduct). [Emphasis added.]
In the instant case, respondent suggests he acted in good faith because he believed this court’s judgment suspending him in Nalls II was not final due to the pendency of his rehearing application. However, as noted previously,[2] the clear language of our judgment in Nalls II, as well as the provisions of Supreme Court Rule XIX, § 26(E), make it clear the January 16, 2009 judgment suspending respondent’s license to practice law took effect immediately and was not subject to suspension during the rehearing delays.
| inMoreover, even assuming respondent believed the court’s judgment was not *1018 final in January 2009, we find respondent acted imprudently in accepting a $2,500 advance fee in February 2009 without advising his client there was a likelihood he would not be able to complete the representation. Respondent further sought to mislead his client in an apparent attempt to cover up his suspension by advising her other attorneys would appear in court on her behalf. These actions reveal respondent acted with deceit and placed his own interests ahead of the client’s best interests. Under these circumstances, we conclude respondent knowingly and willfully attempted to practice law in disregard of this court’s order of suspension. Disbarment is the appropriate sanction for such misconduct.
We further agree with the board that respondent mishandled Mr. Garner’s funds. Having found respondent’s unauthorized practice of law warrants disbarment, we will not impose a separate sanction for this misconduct; however, we will order respondent to render an accounting and make full restitution to Mr. Garner.
Accordingly, we will accept the board’s recommendation and disbar respondent. We will further order respondent to provide an accounting to Mr. Garner and make full restitution, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Clarence T. Nalls, Jr., Louisiana Bar Roll number 1500, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent provide an accounting to Wade Garner and make full restitution, as appropriate. All costs and expenses in the matter are assessed |n against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Although respondent sought a rehearing, this rehearing application did not prevent his suspension from becoming effective in light of our order making the suspension effective immediately. See Supreme Rule XIX, § 26(E) (providing that court orders imposing discipline “are effective in accordance with La. C.C.P. Art. 2167, unless otherwise ordered.") [Emphasis added.]

. See footnote 1, supra.