*This opinion is subject to revision before final publication in the Pacific Reporter*

**2016 UT 32**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the matter of the Discipline of
DONALD D. GILBERT, JR.

DONALD D. GILBERT, JR.,
*Appellant,*

*v.*

UTAH STATE BAR,
*Appellee.*

No. 20150628
Filed July 20, 2016

On Direct Appeal

Fourth District, Provo
The Honorable Fred D. Howard
No. 100401646

Attorneys:

Lynn O. Poulson, Lehi, for appellant

Adam C. Bevis, Salt Lake City, for appellee

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE HIMONAS joined.

JUSTICE PEARCE, opinion of the Court:

¶1 Donald D. Gilbert, Jr. appeals the district court's order concluding that he violated the Utah Rules of Professional Conduct and disbarring him from the practice of law. We affirm the district court's order and conclude that disbarment is an appropriate sanction.

## BACKGROUND

¶2 Donald D. Gilbert, Jr. represented the Utah Down Syndrome Association (the Association) and a number of its founders in a dispute with the Utah Down Syndrome Foundation (the Foundation). The Foundation is a Utah nonprofit corporation that operates, in part, through fourteen county chapters. The chapters are run mainly by volunteers who help the Foundation achieve its goals of advocating for and providing support to members of the community with Down syndrome.

¶3 In 2006, a number of the board members of the Salt Lake and Utah County chapters (the Chapters) became concerned with the Foundation's operations. These board members questioned whether the Foundation was complying with its governing documents and Utah law. They hired Gilbert to consult with them on their corporate governance questions. Eventually, a number of the Chapters' officers, while still serving in their representative capacities for the Chapters, formed the Association as a purportedly separate entity with charitable purposes similar to the Foundation's.

¶4 The Foundation responded by sending letters to six of the Chapters' officers, removing them from their positions within the Chapters. The dispute between the Foundation and the officers eventually boiled over into litigation. Gilbert represented the Association, the Chapters, and certain members of the Chapters' boards of directors in two lawsuits.

¶5 In the first suit, two of the Chapters' board members, Eric Holman and Melanie Taylor, retained Gilbert to file derivative claims against the Foundation's board of directors and officers on behalf of the Foundation and the Chapters. Gilbert's clients sought a declaratory judgment that the president of the Foundation and other officers lacked the legal authority to act on behalf of the Foundation. The district court granted summary judgment to the Foundation's officers, determining that Holman and Taylor did not have standing to file suit on the Foundation's behalf.

¶6 In the second action, the Foundation sought an accounting and the return of funds that the Foundation claimed the Association's founders had taken. The Foundation named Holman, Taylor, and five additional board members of the Chapters (the Individual Defendants) in the suit. The Foundation also named the Association as a defendant. The Foundation alleged that the Individual Defendants had acted unlawfully by continuing to access

the Chapters' bank accounts, which the Foundation claimed were in actuality the Foundation's bank accounts, after the Individual Defendants had been removed from their Chapter positions.

¶7 The Foundation moved for partial summary judgment, which the Individual Defendants did not oppose. The district court granted the Foundation's motion and issued an order requiring the Individual Defendants to return all funds taken from the bank accounts and enjoined the Individual Defendants from further accessing funds in those accounts (the Injunction). Although Gilbert did not represent the Individual Defendants in the second action at the time the court entered the Injunction, Gilbert received a copy of that order approximately five days after it issued.

¶8 After receiving the Injunction, Gilbert accepted four checks for payment of $30,000 in attorney fees that were drawn on the bank accounts the Injunction identified as belonging to the Foundation. Holman, who was expressly enjoined from accessing those bank accounts and who had been ordered to return the Chapter funds to the Foundation by the Injunction, signed the first check for $6,000.[1] All four checks were signed, delivered, and negotiated after entry of the Injunction.

¶9 At the time he accepted the checks, Gilbert knew, or should have known, that the funds he received were the subject of litigation and that the bank accounts from which the funds were taken were subject to the Injunction. Nevertheless, Gilbert did not deposit the monies into a trust account or otherwise hold the funds pending the resolution of the dispute between his clients and the Foundation. Nor, as the district court found, did Gilbert "notify the court . . . of his intention to accept the . . . checks based on his position that [the Injunction] was invalid, void, had expired, [and] did not apply to the [funds] he received." Rather, Gilbert simply cashed the checks and kept the funds.

¶10 The Foundation eventually learned that Gilbert had received payments from the bank accounts subject to the Injunction. The Foundation filed a motion to disgorge and requested an order requiring Gilbert to return the funds he had received from the Chapters' bank accounts. After a hearing on the Foundation's

---

[1] The other three checks were signed by Chapter board members who had not been expressly named in the Injunction.

motion, the district court ordered Gilbert to return the attorney fees to the Foundation.

¶11   Despite the district court's order, Gilbert did not return the legal fees he had received. The Foundation eventually filed a second motion for disgorgement of funds. The court granted the Foundation's second motion and entered judgment against Gilbert for $30,000, interest, and associated attorney fees. To date, Gilbert has not returned the funds to the Foundation.

¶12  Two years after the district court issued the second disgorgement order, a Foundation officer filed an informal complaint against Gilbert with the Utah State Bar's Office of Professional Conduct (the OPC). After a screening panel recommended formal action, the OPC initiated disciplinary proceedings against Gilbert. The OPC's complaint alleged that Gilbert had violated five of the Utah Rules of Professional Conduct. Gilbert's defense centered on the validity of the Injunction and the disgorgement order. He argued that the Injunction was void for a variety of reasons, that he had no obligation to comply with a void order, and that he was excused from complying with the disgorgement order because the court lacked jurisdiction over him as a nonparty to the actions.

¶13   Gilbert filed a third-party complaint pursuant to rule 14 of the Utah Rules of Civil Procedure, impleading the Foundation into his disciplinary proceeding. The district court granted Gilbert's motion, but this court reversed that decision. We held that third-party complaints are inappropriate in attorney discipline proceedings. *In re Discipline of Gilbert v. Utah Down Syndrome Found., Inc.*, 2012 UT 81, ¶ 28, 301 P.3d 979. We concluded that "[n]either the historical nor current framework for adjudicating attorney discipline cases allows litigation of collateral matters in an attorney disciplinary action." *Id.* ¶ 29. We then remanded the case and directed that "by denying impleader in this case, we do not dismiss [Gilbert's] third-party complaint on its merits." *Id.* ¶ 28. We also suggested that Gilbert "may pursue his third-party complaint in an independent action." *Id.*

¶14   On remand, the district court dismissed Gilbert's third-party complaint against the Foundation without prejudice. Gilbert objected and moved for a new trial or new judgment. Gilbert contended, *inter alia*, that Utah Rule of Civil Procedure 21 required the district court to sever, and not dismiss, his third-party complaint. The district court denied that motion.

4

¶15 Gilbert also moved to stay or continue the disciplinary proceedings until his third-party complaint against the Foundation could be resolved. The district court determined that Gilbert had not shown good cause to stay the disciplinary action. The court concluded that the facts underlying the disciplinary proceeding have "little to do with [Gilbert's] appeal against [the Foundation]," and that even if Gilbert were to succeed against the Foundation, the resolution of that dispute "would not affect the issues in the disciplinary case."

¶16 The district court held a five-day bench trial. At the end of the trial, the district court concluded that Gilbert had violated four of the Utah Rules of Professional Conduct: rule 1.7(a) (Conflict of Interest: Current Clients), rule 1.15(e) (Safekeeping Property), rule 3.4(c) (Fairness to Opposing Party and Counsel), and rule 8.4(d) (Misconduct).

¶17 The district court then determined that disbarment was the presumptive discipline under rule 14-605 of the Supreme Court Rules of Professional Practice and reviewed aggravating and mitigating circumstances. It found the following aggravating circumstances: that Gilbert's conduct evidenced a selfish motive; that Gilbert had committed multiple violations of the Utah Rules of Professional Conduct; that Gilbert continually refused to acknowledge the wrongful nature of his actions and had demonstrated a lack of remorse; that Gilbert had substantial experience in the practice of law; and that Gilbert had "made no effort to rectify the consequences of the misconduct," including his failure to repay any of the $30,000 owed to the Foundation. The court determined that the absence of a prior disciplinary record and the testimony of family and friends relating to his good character were mitigating circumstances. Based on the many aggravating circumstances and the relative lack of mitigating circumstances, the court determined that the presumptive sanction of disbarment was appropriate and entered an order disbarring Gilbert from the practice of law. Gilbert appeals.

## ISSUES AND STANDARDS OF REVIEW

¶18 Gilbert first argues the district court erred in concluding that he violated the Utah Rules of Professional Conduct. "This court is charged with governing the conduct and discipline of those admitted to practice law in this state." *In re Discipline of Johnson*, 2001 UT 110, ¶ 3, 48 P.3d 881. Accordingly, "[i]n matters of attorney discipline, we review 'findings of facts under the clearly erroneous

standard' while 'reserv[ing] the right to draw different inferences.'" *In re Discipline of Brussow*, 2012 UT 53, ¶ 13, 286 P.3d 1246 (second alteration in original) (citation omitted).

¶19 Gilbert next contends that disbarment is an improper and excessive sanction. We review the district court's decision for correctness because "our constitutional responsibility requires us to make an independent [sanction] determination." *In re Discipline of Jardine*, 2015 UT 51, ¶ 16, 353 P.3d 154 (citation omitted).

¶20 Gilbert also contends that the district court erred by improperly dismissing his third-party complaint against the Foundation. Specifically, Gilbert argues that rule 21 of the Utah Rules of Civil Procedure required the district court to sever, rather than dismiss, his complaint. "A district court's interpretation of a rule of civil procedure presents a question of law that is reviewed for correctness." *Aequitas Enters., LLC v. Interstate Inv. Grp., LLC*, 2011 UT 82, ¶ 7, 267 P.3d 923. The district court's dismissal of a third-party complaint, however, is reviewed for abuse of discretion. *See Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) ("We review the district court's order dismissing appellants for misjoinder under an abuse of discretion standard."); *cf. In re Discipline of Gilbert v. Utah Down Syndrome Found., Inc.*, 2012 UT 81, ¶ 14, 301 P.3d 979.

¶21 Gilbert's final argument posits that the district court abused its discretion in declining to stay the disciplinary proceedings to permit him to resolve his complaint against the Foundation. We review a district court's refusal to grant a stay of proceedings for an abuse of discretion. *Lewis v. Moultree*, 627 P.2d 94, 96 (Utah 1981) ("It lies within the inherent powers of the courts to grant a stay of proceedings. It is a discretionary power, and the grounds therefor necessarily vary according to the requirements of each individual case."); *see also Macris v. Sevea Int'l, Inc.*, 2013 UT App 176, ¶ 25, 307 P.3d 625.

## ANALYSIS

### I. GILBERT VIOLATED THE UTAH RULES OF PROFESSIONAL CONDUCT

*A. Rule 1.7 (Conflict of Interest: Current Clients)*

¶22 Gilbert first challenges the district court's conclusion that he violated rule 1.7 of the Utah Rules of Professional Conduct. Rule 1.7 requires that a lawyer "not represent a client if the representation involves a concurrent conflict of interest." UTAH R. PROF'L CONDUCT 1.7(a). A concurrent conflict of interest exists if "[t]he representation

of one client will be directly adverse to another client" or "[t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.* R. 1.7(a)(1)–(2). Notwithstanding the existence of a concurrent conflict of interest, a lawyer may in some instances represent a client if, among other things, "each affected client gives informed consent, confirmed in writing." *Id.* R. 1.7(b)(4).

¶23 The district court found at least two rule 1.7 violations.[2] First, the court found, "Once [Gilbert] accepted and cashed checks

---

[2] In addition to the two violations discussed in the text, the district court appears to have found an additional violation based upon Gilbert's concurrent representation of both the Foundation and the Individual Defendants. Gilbert steadfastly maintains that the district court erred because he never represented the Foundation. The district court found, "Where [the Chapters] were not separate entities from [the Foundation], their interests were adverse to the interest of the [Individual Defendants]." On this point, the district court's order has a distinct "hoisted by his own petard" flavor, as it appears that Gilbert did at times assert that the Chapters "are not any sort of legal entity in any way, shape, or form," but were part of the Foundation as a means to argue that his clients could not comply with, or were already in compliance with, certain court orders.

The record does not reflect the relationship between the Foundation and the Chapters with enough precision to allow us to opine on the ultimate correctness of the district court's finding and conclusion. Gilbert's briefing similarly does not provide any assistance in sorting out the relationship between the Chapters and the Foundation. We therefore reject Gilbert's challenges to this portion of the court's order as inadequately briefed. *See Sanpete Am., LLC, v. Willardsen*, 2011 UT 48, ¶ 64 n.14, 269 P.3d 118 ("We will not address inadequately briefed issues."); *Johnson v. Johnson*, 2014 UT 21, ¶ 20, 330 P.3d 704 (holding that to adequately brief an issue, the party must include "the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on" and that "[m]ere bald citation to authority, devoid of any analysis, is not adequate" (citations omitted)). However, given the murkiness cloaking the district court's conclusion and the abundance of other

(continued . . .)

written against funds in [the Chapters'] accounts, [his] interests in getting paid and avoiding disgorgement of the legal fees he received created a concurrent conflict with the interest of his clients and their need to comply with the [Injunction]." The court determined that "even if the concurrent conflict[] w[as] waivable, . . . Gilbert failed to consult with each of his clients about the conflicts of interest and obtain written waivers giving their informed consent." Gilbert does not challenge this conclusion.

¶24 Gilbert's failure to contest this conclusion permits us to uphold the district court's rule 1.7 finding because we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only one of those grounds. *See State v. Roberts*, 2015 UT 24, ¶ 38, 345 P.3d 1226. Nevertheless, the district court correctly concluded that Gilbert's interests diverged from his clients' once the court ordered him to return the attorney fees. Although this alone would sustain the court's determination that Gilbert violated rule 1.7, we review Gilbert's challenge to the district court's other rule 1.7 determination because we examine the entirety of the record to determine the appropriate sanction.

¶25 The district court next concluded that Gilbert simultaneously represented the Individual Defendants, the Chapters, and the Association "when a concurrent conflict of interest existed between some of the parties' interests." Among other things, the district court found that Gilbert, due to his representation of the Individual Defendants, was unable to consult with or advise the other board members of the Chapters to take actions that could be contrary to the Individual Defendants' interests.

¶26 Gilbert does not argue that the rules of professional conduct permit his concurrent representation of the Individual Defendants and the other Chapter board members. Instead, he contends that "[n]ot a single one of [his clients] has come forward with any complaint" about his concurrent representation, so there can be no conflict. Although Gilbert does not express his argument in these terms, his argument could be construed as one rooted in waiver. In other words, since none of his clients complained about the

---

evidence demonstrating Gilbert's violations, we will not factor this particular rule 1.7 violation finding into our analysis of the appropriate sanction for Gilbert's actions.

concurrent representation, they should be deemed to have waived the conflict. Although a party can waive a rule 1.7 conflict in some circumstances, each affected client must give informed consent, confirmed in writing. *See* UTAH R. PROF'L CONDUCT 1.7(b). There is no question that Gilbert never sought or received his clients' informed and written consent to waive the conflict of interest. Thus, the lack of complaint by Gilbert's clients did not bar the district court from finding a conflict of interest.

¶27 Gilbert has not established that the district court erred in concluding that Gilbert's representation of the Individual Defendants, the Chapters, and the Association created a concurrent conflict of interest. Nor has he established that the district court erred in concluding that once the district court ordered him to disgorge the attorney fees he had received, his interest in keeping those fees created a concurrent conflict of interest that prevented him from zealously representing his clients' interests.[3]

### B. Rule 3.4 (Fairness to Opposing Party and Counsel)

¶28 Gilbert next challenges the district court's determination that he violated rule 3.4 of the Utah Rules of Professional Conduct. Rule 3.4(c) instructs, "A lawyer shall not: . . . knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." *Id.* R. 3.4(c).

¶29 While rule 3.4(c) does not define the term "open refusal" nor describe how an attorney should openly refuse, other courts and commentators have determined that at a minimum, this rule requires an attorney to put a court on notice that the attorney will not comply with the court-imposed obligation. *See* 1 GEOFFREY C. HAZARD, JR., WILLIAM W. HODES, & PETER R. JARVIS, LAW OF LAWYERING § 33.11

---

[3] Gilbert also summarily contends that the district court's rule 1.7 conflict-of-interest determinations should be reversed because the OPC "presented no complaining witness and had no standing itself to assert a conflict of interest." We reject this argument as inadequately briefed. *See State v. Timmerman*, 2009 UT 58, ¶ 25 n.5, 218 P.3d 590 ("An issue is inadequately briefed if the argument merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority." (alteration in original) (citation omitted) (internal quotation marks omitted)).

(4th ed. 2015) (noting that Model Rule 3.4(c) "permits good faith and open noncompliance in order to test an order's validity"); *In re Disciplinary Proceeding Against Jones*, 338 P.3d 842, 853 (Wash. 2014) (concluding that rule 3.4(c) of the Washington Rules of Professional Conduct is violated when an attorney takes action contrary to a court's order unless the attorney openly and unequivocally refuses to comply before the court); *In re Disciplinary Matter Involving Ford*, 128 P.3d 178, 181–82 (Alaska 2006) (concluding that an attorney could have avoided a violation of rule 3.4(c) of the Alaska Rules of Professional Conduct by "openly . . . informing the superior court that he could not comply with the order" and stating that "[a]n attorney may challenge a court order by motion, appeal, or other legal means, but may not simply disregard it").

¶30 In other words, rule 3.4(c) stands, at a minimum, for the proposition that an attorney must either obey a court order or alert the court that he or she intends to not comply with the order. An attorney may not, as Gilbert did here, ignore a court order while secretly hoping to have a trump card to play if non-compliance later becomes an issue. *See Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979) ("An attorney who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result."); *In re Disciplinary Action Against Igbanugo*, 863 N.W.2d 751, 763 (Minn. 2015) (determining that an attorney violated rule 3.4(c) of the Minnesota Rules of Professional Conduct because the attorney's failure to abide by a court order did not include an open refusal before the court and declining to give weight to the attorney's belief that the obligation imposed by the court was beyond the court's authority); *In re Disciplinary Matter Involving Ford*, 128 P.3d at 181 (determining that an attorney violated Alaska Rule of Professional Conduct 3.4(c) by unilaterally returning a check to an out-of-state payor in contravention of a court's order, despite the court's recognition that "difficulties may arise if an attorney honestly believes he or she is caught between obligations to the client and obligations to the court," because "[i]f [the attorney] felt he was obliged to disobey the superior court's order, he should have done so openly by informing the superior court that he could not comply with the order").

¶31 The district court determined that Gilbert violated rule 3.4(c) "by failing to notify the court of his intention to accept the [attorney fees] checks and disobey the [Injunction] prior to or concurrent with

his acceptance of the checks." The record indicates that Gilbert was aware of, and had actually been served a copy of, the Injunction before he accepted the checks from his clients. Gilbert contends, without reference to rule or case law, that he was not required to put the court on notice of his acceptance of the attorney fees in this instance and that even if he did, his belief that the Injunction was void relieved him of any obligation to comply with the court's order.

¶32 Although Gilbert may have harbored reservations about the order's validity, he, in the district court's words, "had a duty to openly contest the order by filing a request to stay the order in court, notify the court of his receipt of the . . . checks and at least hold the monies in trust until the court ruled on the issue." The district court interpreted and applied rule 3.4(c) correctly.[4]

### C. Rule 1.15 (Safekeeping Property)

¶33 Gilbert also contends that the district court erred in determining that he violated rule 1.15 of the Utah Rules of Professional Conduct. Rule 1.15(e) requires,

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

UTAH R. PROF'L CONDUCT 1.15(e).

---

[4] Gilbert relies on this court's 1913 decision in *In re Evans* as authority for the proposition that an attorney can ignore a void court order. *See* 130 P. 217 (Utah 1913). In *Evans,* two attorneys were disbarred for champerty, an illegal agreement to share lawsuit proceeds with a person with no prior interest in the suit. The attorneys were prohibited from practicing law until they returned certain funds to the court. *Id.* at 220. On review, this court found the disbarment order void and vacated it. *Id.* at 231. Nothing in *Evans* suggests that an attorney can, consistent with Utah Rules of Professional Conduct, ignore a court order. To the contrary, the attorneys in *Evans* returned the funds as the district court ordered prior to petitioning this court to vacate the court order. *Id.* at 220.

¶34 The district court concluded that Gilbert violated rule 1.15(e) in two ways. First, Gilbert failed to place any of the $30,000 in attorney fees in a trust account despite knowing that both the Foundation and his clients claimed ownership of the funds. And second, Gilbert violated rule 1.15(e) by failing to return the $30,000 to the Foundation when ordered to do so by the court. *See id.* R. 1.15 cmt. 3 ("The undisputed portion of the funds shall be promptly distributed."); 1 GEOFFREY C. HAZARD, JR., WILLIAM W. HODES, & PETER R. JARVIS, LAW OF LAWYERING § 20.03 (4th ed. 2015) (concluding that rule 1.15(e) requires an attorney to "promptly make proper disposition as to any undisputed portion, and expeditiously seek to settle the dispute as to the remainder"); *id.* § 20.08 (concluding that rule 1.15(e) requires that "the lawyer . . . not take advantage of physical control of the funds, but must scrupulously abide" by the requirement that an attorney return funds no longer in dispute); *id.* ("Rule 1.15(e) requires that any amounts that are not in dispute be disbursed promptly according to paragraph (d), but that the lawyer continue to segregate and keep safe the remaining funds *until the dispute can be resolved*." (emphasis added)). Gilbert does not challenge any of the factual findings underlying the district court's conclusions. Nor does Gilbert contend that the district court's order misconstrued rule 1.15(e).

¶35 Instead, Gilbert contends that he did not violate rule 1.15(e) because the Injunction was void. As explained above, an attorney has a professional obligation to comply with a court order and cannot unilaterally ignore a court order based on her belief that the court's order was wrongly determined. It logically follows that an attorney cannot ignore rule 1.15(e)'s obligation to safekeep disputed funds and disburse undisputed funds based upon a claim that the district court's order is void. Gilbert's attack on the court's rule 1.15(e) determination fails.

### D. Rule 8.4 (Misconduct)

¶36 Gilbert also disputes the district court's determination that he violated rule 8.4 of the Utah Rules of Professional Conduct. Rule 8.4 defines professional misconduct and prohibits attorneys from engaging "in conduct that is prejudicial to the administration of justice." UTAH R. PROF'L CONDUCT 8.4(d). The district court concluded that Gilbert violated rule 8.4(d) by failing to comply with the Injunction, by failing to comply with the district court's disgorgement order, and by assisting his clients' violation of the Injunction.

¶37 Gilbert does not challenge the facts underlying the court's determination. Rather, Gilbert again contends that his actions did not violate rule 8.4 because he had a good faith belief that the district court's orders were invalid. He points to comment 4 to rule 8.4, which states, "A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists." *Id.* R. 8.4 cmt. 4.

¶38 That comment does not, however, provide an attorney carte blanche to ignore court orders. As explained above, the Utah Rules of Professional Conduct contemplate the situation in which Gilbert found himself: subject to an order he believed to be flawed. The rules instruct an attorney in that situation to either comply or *openly* refuse to comply. An open refusal permits the district court to assess the attorney's argument and allows opposing counsel to take action to protect her client from the opposing attorney's noncompliance. An attorney cannot, consistent with the rules of professional conduct, unilaterally and surreptitiously flout a court order. To the contrary, willful disregard of a district court's order without an open objection constitutes conduct prejudicial to the administration of justice.

¶39 Despite the directive of the rules of professional conduct, Gilbert declined to formally or openly object to the court's order. Instead, Gilbert disregarded the disgorgement order without taking any action to appeal, stay, or otherwise object to the order. The district court correctly noted, "Regardless of whether an attorney believes that the attorney is entitled to fees from a client, if court orders award the funds to others, the attorney violates rule 8.4(d) by disregarding the orders." *See In re Disciplinary Action Against Igbanugo*, 863 N.W.2d at 763–64 (concluding that an attorney's "failure to comply with a court order is conduct prejudicial to the administration of justice" despite the attorney's contention that the judge lacked authority to enter the order).

¶40 The district court did not err in determining that Gilbert's conduct was prejudicial to the administration of justice. We affirm the district court's conclusion that Gilbert violated rules 1.7, 1.15(e), 3.4(c), and 8.4(d) of the Utah Rules of Professional Conduct.

## II. DISBARMENT IS AN APPROPRIATE SANCTION

¶41 Gilbert also contends that disbarment constitutes an inappropriate sanction for his conduct. In matters of attorney discipline, we have a responsibility to ensure that the correct discipline is imposed. We owe no deference to the district court's

determination. *See In re Discipline of Jardine*, 2015 UT 51, ¶ 16, 353 P.3d 154.

¶42   Gilbert attacks the district court's order on two fronts. First, Gilbert argues that his conduct does not give rise to the presumption of disbarment found in rule 14-605 of the Supreme Court Rules of Professional Practice.

¶43   Rule 14-605 provides that disbarment is presumptively appropriate when a lawyer

> knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct with the intent to benefit the lawyer or another or to deceive the court, and causes serious or potentially serious injury to a party, the public, or the legal system, or causes serious or potentially serious interference with a legal proceeding.

SUP. CT. R. PROF'L PRACTICE 14-605(a).

¶44   Gilbert argues that the district court erred in finding that he committed knowing violations of rule 8.4(d) and that the OPC failed to present first-hand evidence of his intent to benefit himself. Gilbert's argument fails because a court is entitled to make findings based on circumstantial evidence. *Cf. Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067 ("'[I]t is a well-settled rule that circumstantial evidence alone may be sufficient to establish the guilt of the accused.' Circumstantial evidence is particularly useful in establishing intent because direct evidence of intent is rarely available. . . . [C]ircumstantial evidence [may be used] to find intent on the basis of reasonable inferences drawn from the evidence." (first alteration in original) (citation omitted)). Here sufficient circumstantial evidence exists to support the district court's findings.

¶45 The undisputed evidence demonstrates that Gilbert knowingly violated rule 8.4(d) of the Utah Rules of Professional Conduct, as required by rule 14-605(a). Gilbert knowingly ignored, and continues to knowingly ignore, the court's disgorgement order. Gilbert was present and argued before the district court when the court first ordered him to return the attorney fees. Gilbert does not dispute that he was sent a copy of the court's second order requiring him to disgorge the $30,000 in attorney fees. The district court did not need Gilbert's testimony on the question of intent to properly

conclude that Gilbert made a conscious choice to disobey these court directives.[5]

¶46 Gilbert also contends that insufficient evidence was adduced at trial to support the district court's findings that his conduct caused serious or potentially serious injury. The district court correctly noted that Gilbert's actions caused injury to his clients, the public, the legal profession, and the legal system. It found that Gilbert's conduct caused direct pecuniary harm to the Foundation. To this day, the Foundation has not been able to collect and use the $30,000 taken from its bank accounts to pay Gilbert. Further, the court found that Gilbert's disregard of multiple court orders caused serious injury to the legal profession, legal system, and the public by creating a general mistrust of attorneys and the operation of the legal system. Last, the district court concluded that Gilbert's representation in spite of multiple conflicts of interest "causes at least potential injury to the clients, and actual injury to the legal system and the profession, by creating distrust of the system and lawyers."

¶47 We concur with the district court. The attorney, as an officer of the court, "has the right to set the judicial machinery in motion in behalf of another." *In re Integration & Governance of Utah State Bar*, 632 P.2d 845, 847 (Utah 1981). "To function properly in the administration of justice the courts must retain control of their officers," including those attorneys appearing before the court. *Id.* When attorneys knowingly ignore a court order, it promotes distrust of the legal system and attorneys. Simply stated, Gilbert has not demonstrated that his conduct should not trigger the presumption of disbarment under rule 14-605(a) of the Supreme Court Rules of Professional Practice.

¶48 Gilbert next argues that, even if the disbarment presumption were to attach, his conduct does not merit disbarment. He argues that we have generally ordered disbarment where attorneys have misappropriated client funds or acted in an otherwise fraudulent or dishonest manner. *See, e.g.*, *In re Discipline of Babilis*, 951 P.2d 207, 217 (Utah 1997) (imposing the sanction of disbarment against an attorney for his intentional misappropriation of client funds). Gilbert

---

[5] Sufficient evidence also supports the district court's conclusion that Gilbert acted with the intent to benefit himself. Indeed, Gilbert has offered no other justification for retaining the $30,000.

distinguishes his conduct from situations where attorneys have been disbarred for pilfering monies out of client trust accounts. Gilbert's argument is, in essence, that because his conduct did not amount to outright theft, he cannot be disbarred. This is simply incorrect. Gilbert finds himself in the position he is in not because $30,000 found its way into his personal bank account. Gilbert faces discipline because he knew that the $30,000 his clients used to pay him came from bank accounts that the district court had ordered the Individual Defendants to refrain from accessing. He also faces discipline because he ignored the district court's orders requiring him to return the wrongfully taken funds.

¶49 Although we are unaware of any case in which we have considered the sanction for an attorney who accepts and retains funds in violation of a court order, we have ordered disbarment when an attorney has willfully refused to comply with a court order. *See In re Johnson*, 830 P.2d 262, 263–64 (Utah 1992). In *Johnson*, a district court suspended an attorney from the practice of law. *Id.* at 263. We determined that the attorney's "continued . . . practice [of] law in flagrant disregard" of the court's suspension order violated the Utah Rules of Professional Conduct, and we concluded that "[i]n the interest of protection of the public and the legal profession, this court must therefore order [the attorney's] disbarment." *Id.* at 263–64. We came to this conclusion despite the attorney's argument that disbarment was inappropriate because he possessed a good faith belief that he could show good cause for disregarding the suspension order. *See id.* at 263.

¶50 Other courts have ordered disbarment for conduct similar to Gilbert's. In *Cuyahoga County Bar Ass'n v. Wagner*, 884 N.E.2d 1053 (Ohio 2008), the Ohio Supreme Court permanently disbarred an attorney for his failure to comply with a district court's order requiring him to return a client fee. *See id.* at 1055–56. The attorney represented a client before a United States Bankruptcy Court. After the attorney failed to respond to the bankruptcy court's requests and failed to appear before the court, the court found the attorney in contempt "and ordered him to return the client's fee." *Id.* at 1054. The attorney did not. *Id.* The Ohio Supreme Court concluded, "[The attorney's] conduct in this matter . . . reflects a lack of regard for the ethical and professional standards required of members of the bar." *Id.* at 1055. The court therefore ordered that the attorney be permanently disbarred from the practice of law. *See id.* at 1055–56.

¶51 Similarly, in *Florida Bar v. Bailey*, 803 So. 2d 683 (Fla. 2001), F. Lee Bailey was disbarred for, among other things, his failure to obey two federal court orders, *see id.* at 695. Bailey was ordered by the district court to hold and not disburse assets related to an ongoing court case. *Id.* at 693. Another court order required Bailey to bring all designated assets to a court hearing. *Id.* Bailey subsequently "took no action to segregate or safeguard" the funds. *Id.* The Supreme Court of Florida concluded that "[e]ven if Bailey felt that he was entitled to the [funds] in his personal account, this does not permit him to act in contravention of two federal court orders." *Id.* The court reasoned, "[A]n attorney is not permitted to ignore and refuse to follow a court order based upon his personal belief in the invalidity of that order. To countenance that course is to court pandemonium and a breakdown of the judicial system." *Id.* (citation omitted). In imposing disbarment, the court concluded that Bailey's "disregard of [the judge's] orders demonstrate[d] a disturbing lack of respect for the justice system and how it operates." *Id.* at 694; *see also In re Nalls*, 145 So. 3d 1011 (La. 2014) (disbarring an attorney for his "knowing[] and willful[] attempt[] to practice law in disregard of this court's order of suspension" due to it manifesting a "conscious intent to flout the authority of" the court); *In re Disciplinary Action Against Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012) (concluding that a "failure to comply with court orders is a 'serious violation' and that 'repeated failure to comply with court orders' is itself a ground for disbarment"); *In re Klagsbrun*, 717 N.Y.S.2d 297, 299 (App. Div. 2000) ("The respondent's repeated disregard of court orders and rules constitutes misconduct that goes to the heart of the judicial system and warrants his disbarment."); *In re Rich*, 559 A.2d 1251, 1257 (Del. 1989) (ordering the disbarment of an attorney for, among other things, his disregard of multiple orders of the Delaware Supreme Court, because the attorney's actions "indicate[d] a lack of regard for the profession which he has damaged").

¶52 Even though we agree with Gilbert that his conduct presents a different factual scenario from many cases in which we have ordered disbarment, we do not agree with his contention that a lesser sanction is therefore appropriate. We also agree with the district court that the aggravating and mitigating circumstances support the conclusion that disbarment is the appropriate sanction

for Gilbert's conduct.[6] "[T]he distinction between disbarment . . . and suspension . . . lies, in part, in 'the attorney's motive and in the relative severity of the conduct.'" *In re Discipline of Doncouse*, 2004 UT 77, ¶ 16, 99 P.3d 837 (citation omitted). We have held that "[t]o justify a departure from the presumptive level of discipline set forth in the Standards, the aggravating and mitigating factors must be significant." *In re Discipline of Ince*, 957 P.2d 1233, 1237–38 (Utah 1998).

¶53  The district court found as aggravators: (1) Gilbert's selfish motive in disregarding the Injunction, (2) Gilbert's violations of multiple rules of professional conduct, (3) Gilbert's refusal to acknowledge any wrongdoing or demonstrate remorse for his conduct, (4) Gilbert's substantial experience in the practice of law, and (5) Gilbert's failure to comply with the district court's order of disgorgement or otherwise "rectify the consequences of his misconduct." The only mitigating circumstances the district court found were Gilbert's absence of a prior disciplinary record and the testimony of family and friends relating to his good character.

¶54  Like the district court, we conclude that the aggravating and mitigating circumstances confirm disbarment as the appropriate sanction. Here, Gilbert concluded that his desire to keep the fees outweighed the court's interest in resolving and bringing finality to the dispute. Indeed, Gilbert's willingness to continually disregard the district court's orders is extremely troubling conduct for an

---

[6] Gilbert's disbarment is also consistent with the underlying goals of our rules of professional conduct.

> The purpose of imposing lawyer sanctions is to ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers, and to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities.

SUP. CT. R. PROF'L PRACTICE 14-602(b).

officer of the court. Gilbert's actions demonstrated a lack of respect for the district court and the legal system as a whole.[7]

¶55 But Gilbert's lack of remorse and his unwillingness to recognize his actions' consequences constitute the most powerful aggravating circumstances. At no point in the proceedings below, or in those before this court, has Gilbert acknowledged an attorney's obligation to comply with court orders. At no time has he acknowledged that our system suffers when attorneys refuse to comply with court orders. Ultimately, it is this lack of respect for the rule of law and the legal process that warrants Gilbert's disbarment. Otherwise, to paraphrase the Florida Supreme Court, "to countenance [this blatant disregard of the court's authority] is to court pandemonium and a breakdown of the judicial system." *Bailey*, 803 So. 2d at 693 (citation omitted).

## III. THE DISTRICT COURT DID NOT ERR IN DISMISSING GILBERT'S THIRD-PARTY COMPLAINT AGAINST THE FOUNDATION

¶56 Gilbert argues that the district court erred by dismissing his third-party complaint.[8] Gilbert contends rule 21 of the Utah Rules of

---

[7] In fact, in 2008, the district court emphasized that Gilbert needed to comply with the court's orders or face the consequences. The court stated, "I don't mean to be offensive but you can't just make up your own sets of rules and do what you want to do. If you didn't get it solved and worked out, that's why you're here. All right?" Gilbert responded, "Judge, please understand, I would never intentionally ignore a court order. I'm an officer of the court." The district court sagely predicted, "You could possibly get disbarred for it."

[8] This is not the first time this Court has had the opportunity to examine Gilbert's third-party complaint. *See In re Discipline of Gilbert v. Utah Down Syndrome Found., Inc.*, 2012 UT 81, 301 P.3d 979. In that case, we reversed the district court's decision to grant Gilbert's third-party impleader of the Foundation in this disciplinary action. *Id.* ¶ 28. We concluded that a third-party complaint is not appropriate in a disciplinary proceeding and directed the district court to dismiss Gilbert's third-party complaint. *Id.* ¶¶ 25, 28–29. On remand the district court dismissed Gilbert's third-party complaint without prejudice by granting the Foundation's previously denied Motion to

(continued . . .)

Civil Procedure required the district court to sever, rather than dismiss, his third-party complaint. We disagree.[9]

¶57   Rule 21 states,

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

U<small>TAH</small> R. C<small>IV</small>. P. 21.

¶58   Gilbert argues that rule 21's language, "Misjoinder of parties is not ground for dismissal of an action," mandates severance and prohibits dismissal of a third-party complaint. Gilbert ignores, however, that the dismissal referenced in that sentence is the original action, not a third-party claim attempted to be joined to the underlying action. In other words, rule 21 provides that misjoinder of a party is not a basis to dismiss an entire action. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522–23 (5th Cir. 2010) (holding that a district court erred by dismissing an "entire action, rather than simply dismissing the claims of any misjoined plaintiffs"); *Clay v. Martin*, 509 F.2d 109, 113 (2d Cir. 1975) (concluding that a complaint could not be dismissed based only on the presence of "improper parties"); *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) ("Misjoinder or non-joinder of parties is not ground for dismissal. The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party . . . ." (citation omitted)); 7 C<small>HARLES</small> A<small>LAN</small> W<small>RIGHT</small>, A<small>RTHUR</small> R. M<small>ILLER</small> & M<small>ARY</small> K<small>AY</small> K<small>ANE</small>, F<small>EDERAL</small> P<small>RACTICE AND</small> P<small>ROCEDURE</small> §§ 1683–84 (3d ed. 2001). Rule 21 derives from the federal equity rules and the English rules of

---

Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, Motion for Summary Judgment.

[9] Gilbert also complains that the district court prematurely granted summary judgment to the Foundation. This argument misapprehends the record. Although the Foundation styled its pleading as both a motion to dismiss and a motion for summary judgment, the court's order indicates that it granted only the motion to dismiss.

practice existing at the adoption of the Federal Rules of Civil Procedure. *See id.* § 1681. In contrast to those at common law, these rules "generally allowed [a] plaintiff to amend the complaint to correct a defect in parties. As a result, an action could proceed on its merits despite an initial misjoinder or nonjoinder whenever the error could be corrected without adversely affecting the parties to the action." *Id.* The district court correctly applied rule 21 and did not err by dismissing Gilbert's third-party complaint.

¶59  Gilbert also appears to argue that even if rule 21 does not mandate severance, the district court abused its discretion in dismissing, rather than severing, his third-party complaint. Rule 21 provides, "Any claim against a party may be severed and proceeded with separately." UTAH R. CIV. P. 21.[10] A party challenging the district court's decision to dismiss, rather than sever, must show that the court abused its discretion. *See* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1688 (3d ed. 2001) (concluding that "[t]he grant or denial of a motion to bring in or to drop a party lies in the discretion of the judge" and that "[t]he trial court's exercise of discretion will not be disturbed on appeal unless an abuse is shown"); *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) ("We review the district court's order dismissing appellants for misjoinder under an abuse of discretion standard.").

¶60 Other courts to have considered this question have concluded that a trial court abuses its discretion only where the district court's dismissal of a third-party complaint prejudices a party, such as by preventing the refiling of the dismissed party's claim. *See Strandlund*, 532 F.3d at 745; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 845–46 (3d. Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

¶61  In *Strandlund*, the court was required to determine whether the district court "was permitted to drop appellants from the case or whether it should merely have severed their claims." 532 F.3d at 745. The court concluded that rule 21 permits the dismissal of a party or

---

[10] Rule 21 also provides, "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." UTAH R. CIV. P. 21.

claim rather than a severance of a claim if the dismissal "*will not prejudice any substantial right*." *Id.* (citation omitted). A substantial right is prejudiced, the court determined, "if dismissal of misjoined parties were to result in the loss of otherwise timely claims." *Id.* The court concluded that the district court had deprived the dismissed parties of a substantial right because the statute of limitations had run on their claims and the dismissal would prevent them from proceeding with claims that were originally filed within the statute of limitations. *Id.* at 746.

¶62  Gilbert does not claim that the district court's dismissal of his third-party complaint without prejudice in any way prevented him from filing his claim against the Foundation as an independent action. Indeed, Gilbert does not claim any prejudice flowing from the district court's dismissal. Because Gilbert does not argue that he was prevented from refiling his claim against the Foundation after the court's dismissal of his third-party complaint without prejudice, the OPC is correct to note that "the correct way . . . to pursue those claims" was to "refile the matter."

¶63  The district court did not contravene rule 21 of the Utah Rules of Civil Procedure or otherwise abuse its discretion by dismissing, without prejudice, Gilbert's third-party complaint against the Foundation. Because Gilbert has not claimed that any prejudice flows from the district court's dismissal of his third-party claim, he has failed to demonstrate that the court abused its discretion.[11]

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO STAY THE DISCIPLINARY ACTION

¶64 Gilbert also contends that the district court erred by declining to stay the disciplinary proceedings until he could bring and resolve his complaint against the Foundation. In attorney discipline proceedings, "[u]pon a showing of good cause, a formal action or a disability proceeding may be stayed because of substantial similarity to the material allegations of a pending

---

[11] Gilbert also claims he was denied due process in the dismissal of his third-party complaint because he was not provided a notice or hearing prior to the district court's grant of the Foundation's motion to dismiss. This contention is inadequately briefed. *See State v. Timmerman*, 2009 UT 58, ¶ 25 n.5, 218 P.3d 590.

criminal, civil, or disciplinary action." SUP. CT. R. PROF'L PRACTICE 14–517(d). The district court's decision to grant or deny a stay is discretionary, and we will not disturb it unless we determine the district court abused its discretion. *See Lewis v. Moultree*, 627 P.2d 94, 96–97 (Utah 1981).

¶65 The district court declined to grant Gilbert's motion to stay the disciplinary proceedings because it concluded,

> [E]ven if everything is as [Gilbert] alleges, this Court is not required to issue a stay on the disciplinary matters. . . . Whether [Gilbert] violated a court order when it was in effect is a matter for the disciplinary proceeding and has little to do with [his] appeal against [the Foundation]. Should [Gilbert] succeed on appeal against [the Foundation], his appeal would not affect the issues in the disciplinary case against [him].

¶66 The district court did not abuse its discretion in declining to stay the disciplinary proceeding. In essence, Gilbert contends that if he could have proceeded against the Foundation, he would have established facts that would have undermined the district court's conclusions that he violated the Utah Rules of Professional Conduct. Gilbert contends that he would have established that the Chapters were independent entities and that the Chapters, not the Foundation, were the owners of the funds.

¶67 Gilbert is wrong to suggest that either of these findings, if established, would have undermined the district court's conclusions or dictated a different outcome. Even if we were to assume that Gilbert's contentions are correct, they would not have changed the district court's ultimate conclusions. Gilbert's violations of the Utah Rules of Professional Conduct do not turn on whether the Injunction and the disgorgement order were correctly entered. Rather, the violations stem from the manner in which Gilbert represented his clients, from his failure to safeguard disputed funds, and from his choice to disregard multiple court orders without putting the court or his opposing counsel on notice. Because the issues Gilbert wanted to litigate against the Foundation would not have impacted the district court's analysis, the district court did not abuse its discretion in refusing to stay the disciplinary proceedings.

## CONCLUSION

¶68 Gilbert represented clients when he had a direct personal interest that conflicted with his representation of those clients, he

disregarded the Injunction, and he facilitated his client's violation of the Injunction by accepting funds subject to that order. And Gilbert, to this day, has disregarded the district court's order requiring that he disgorge the attorney fees he received from his clients. Regardless of the validity of the Injunction and disgorgement order, the Utah Rules of Professional Conduct require that Gilbert not knowingly disregard those orders without making his intentions known to the district court and opposing counsel. While we recognize that disbarment is a severe punishment, it is appropriate here. We affirm the district court's order and conclude that disbarment is the proper sanction for Gilbert's misconduct.

———————